| | | |
|---|---|---|
| OLGA DELACRUZ and MARCO DELACRUZ, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:18-CV-11 |
| CITY OF PORT ARTHUR, *et al.*, | § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendants City of Port Arthur (the "City") and Officer Lane Cherry ("Cherry"), Officer Terry Cater ("Cater"), Sergeant Reid Rowe ("Rowe"), Officer Shannon Meaux ("Meaux"), and Officer Shelby Harper's ("Harper") (collectively, "Defendants")[1] respective 12(b)(6) Motions to Dismiss Plaintiffs' Second Amended Complaint (##37, 41). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss all claims asserted against them by Plaintiffs Olga Delacruz and Marco Delacruz (collectively, "Plaintiffs"), individually and in their representative capacity for the estate of their son, Manuel Delacruz ("Manuel"). Having considered the motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the City's Motion to Dismiss (#37) should be GRANTED and that the Officers' Motions to Dismiss (##37, 41) should be GRANTED in part and DEFERRED in part.

---

[1] The instant motions do not concern the claims brought against Defendants The Medical Center of Southeast Texas, L.P. (the "Medical Center") and Na'Shaun Taylor ("Taylor"). Thus, for purposes of this Memorandum and Order, the term "Defendants" excludes the Medical Center and Taylor. Additionally, Officer Cherry, Officer Cater, Sergeant Rowe, Officer Meaux, and Officer Harper will collectively be referred to as the "Officers."

I.    Background

According to Plaintiffs' Second Amended Complaint (#32), on August 1, 2016, Manuel, who suffered from paranoid schizophrenia, experienced a behavioral episode causing him to be confused and visibly anxious.  His family brought him to the Medical Center for emergency treatment.  Manuel, who was 26 years old, initially refused treatment, and the Medical Center advised his family he could not be admitted involuntarily without a court order.  Manuel's family called an unidentified court, but the clerk told them the judge was unavailable and instructed them to have a police officer fill out and swear to an Application to Facility for Emergency Detention Without a Warrant and Acceptance for Preliminary Examination ( the "Application").  Manuel's family called for police assistance to obtain and complete an Application.

While waiting for the police to arrive, Manuel left and wandered into the parking lot.  At that point, Port Arthur police (including the Officers) arrived and escorted Manuel back into the Medical Center without incident, where he was placed in a glass-walled examination room.  Manuel voluntarily allowed a police officer to handcuff him to the bed, and a nurse remained with him while the police worked on the Application.  Manuel was allegedly sufficiently docile that a police officer later removed the handcuffs.

Cherry executed and swore to the Application, but the Medical Center still refused to admit Manuel until he voluntarily agreed to take medication and a court order was obtained.  The situation allegedly distressed Manuel, who vacillated between agreeing to take the medication and subsequently refusing.  He began to exhibit signs of confusion, disorientation, and loss of memory as to his location and the identities of those around him.  Manuel, who weighed 286 pounds,

allegedly expressed not only a fear that the officers would kill him, but that they would rape him, as well.

Later, the Medical Center agreed to admit Manuel if he would remove all of his clothing and put on a medical gown. Manuel voluntarily removed all of his clothing except for his shorts, which he did not want to remove due to his expressed fear of being raped by the police officers. Cherry and Rowe, one of whom allegedly stated he would "take care of the situation," instructed Manuel's family and the nurse to leave Manuel's examination room. After exiting the room along with the nurse, Manuel's family allegedly heard and witnessed "a very audible and alarming struggle" break out behind the closed examination room door. Curtains blocked their view inside the room, but the family purportedly heard Cherry and Rowe striking and tasing Manuel and saw Cherry and Rowe pin Manuel against the glass wall and door of the room briefly when the altercation pushed the curtains aside.

Eventually, the examination room door opened, and Cherry and Rowe reportedly pulled Manuel, who was on his back, into the hallway. Taylor arrived shortly thereafter, at which point, according to Plaintiffs, Manuel was then in a standing position with Cherry and Rowe on his back. Both officers purportedly "rode him to the ground," which "created a startling audible impact with the floor." After that point, according to Manuel's father, Manuel did not move. Cherry allegedly put Manuel in a chokehold, and Rowe pinned Manuel "to the floor with his full weight" on Manuel's back. A short time later, Cater, Meaux, and Harper arrived and also allegedly placed their full weight onto Manuel's back. Manuel was, at some point after landing on the ground, placed in handcuffs. Altogether, the altercation lasted approximately twenty minutes after Manuel's family left the examination room. Eventually, one of the Officers noticed that Manuel

was non-responsive. When notified, Medical Center staff immediately attempted, unsuccessfully, to resuscitate him. Manuel was pronounced dead at the scene.

Defendants' account of the event differs markedly. According to Defendants, once in the examination room, Manuel grabbed Rowe's hand and pushed him backwards, prompting Rowe and Cherry to restrain him. Manuel allegedly struck Rowe in the head with his right elbow and eventually grabbed an officer's mace can, which he then discharged in Rowe's face. Cherry purportedly disarmed Manuel and told him he was under arrest. Manuel then allegedly lunged at Cherry and pulled his service weapon halfway out of the holster before Cherry broke Manuel's grip. Manuel, Cherry, and Rowe purportedly exchanged blows before the struggle continued onto the floor. A taser was deployed, which allegedly did not stop Manuel's actions. Chery and Rowe then purportedly dragged Manuel into the hallway, where he was placed in handcuffs before the Officers realized he was no longer responsive.

Plaintiffs filed this lawsuit in January 2018. The City and the Port Arthur Police Department filed a motion to dismiss on February 15, 2018, while Cherry filed a motion to dismiss on April 13, 2018. The court granted both motions to dismiss on May 8, 2018, allowing Plaintiffs 14 days to file an amended complaint as to their § 1983 claims against Cherry, the City, and unknown officers later identified as Cater, Rowe, Meaux, and Harper. On June 28, 2018, after the City disclosed all relevant police reports and audiovisual recordings, Plaintiffs filed the Second Amended Complaint (the "Complaint"), re-pleading their § 1983 claims against Cherry and the City and clarifying their § 1983 claims against Cater, Rowe, Meaux, and Harper.[2]

---

[2] The Complaint also includes claims against the Medical Center and Taylor, which are not at issue here.

II.    <u>Analysis</u>

    A.    <u>Motion to Dismiss under Rule 12(b)(6)</u>

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Humana, Inc. v. Shrader & Assocs.*, 584 B.R. 658, 670 (S.D. Tex. 2018); *Faas v. Cascos*, 225 F. Supp. 3d 604, 609 (S.D. Tex. 2016). It is not a procedure for resolving contests about the facts or the merits of a case. *See Stanfield v. Boston Sci. Corp.*, 166 F. Supp. 3d 873, 877 (S.D. Tex. 2015); 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2018). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, ___ U.S. ___, 137 S. Ct. 2003, 2005 (2017); *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (noting that at the 12(b)(6) stage, the court must construe all facts in favor of the non-moving party); *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 567 U.S. 936 (2012). Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)). The "[f]actual allegations must

be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017); *In re La. Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014); *Gibson v. Tex. Dep't. of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 233 (5th Cir. 2012).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see Hicks v. Lingle*, 370 F. App'x 497, 497 (5th Cir.), *cert. denied*, 562 U.S. 1111 (2010); *Wilson*, 667 F.3d at 595. The court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994). The court may also consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))). Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563)); *Bd. of Comm'rs*

*of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 88 F. Supp. 3d 615, 629 (E.D. La. 2015), *aff'd*, 850 F.3d 714 (5th Cir.), *cert. denied*, 138 S. Ct. 420 (2017).

"[A] motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *accord Leal*, 731 F.3d at 410. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation omitted); *accord Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (noting that at the 12(b)(6) stage the court's task "is to determine whether the plaintiff [has] stated a legally cognizable claim that is plausible, not evaluate the plaintiff's likelihood of success"); *Leal*, 731 F.3d at 410. "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming*, 281 F.3d at 161-62 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Leal*, 731 F.3d at 410; *Wilson*, 667 F.3d at 595; *Turner*, 663 F.3d at 775; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir.

2014) (quoting *Iqbal*, 556 U.S. at 678); *Thompson*, 764 F.3d at 503; *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Gibson*, 700 F.3d at 233. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410. Generally, at the 12(b)(6) stage, Plaintiffs are simply required to inform the defendants of the factual basis of their complaint in order to avoid dismissal for failure to state a claim. *See Johnson v. City of Shelby*, ___ U.S. ___, ___, 135 S. Ct. 346, 346-47 (2014) (citing FED. RULE CIV. P. 8(a)(2)); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016).

      B.      <u>Excessive Force Claims against Cherry, Cater, Rowe, Meaux, and Harper, and the Officers' Asserted Qualified Immunity</u>

Plaintiffs claim that the Officers used excessive force against Manuel in violation of his rights under the Fourth Amendment. The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Dist. Atty's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Inyo Cty. v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Orr v. Copeland*, 844 F.3d 484, 491-92 (5th Cir. 2016); *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). It provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983; *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied*, 572 U.S. 1053 (2014). "To state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854-55 (5th Cir. 2012) ~~(en banc)~~ (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)); *accord Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687-88 (5th Cir. 2017); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1001 n.16 (5th Cir. 2014). A § 1983 complainant must support his or her claims with specific facts and may not simply rely on conclusory allegations. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir.), *cert. denied*, 562 U.S. 893 (2010); *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004).

Thus, for Plaintiffs to recover, they must show that the Defendants deprived Manuel of a right guaranteed by the Constitution or the laws of the United States. *Daniels v. Williams*, 474 U.S. 327, 329-31 (1986); *Baker*, 443 U.S. at 139; *Covington Cty. Sch. Dist.*, 675 F.3d at 855. "[T]he first step in a § 1983 analysis is to identify the specific constitutional right involved."

*Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002) (citing *Baker*, 443 U.S. at 140); *Sepulvado*, 729 F.3d at 420 n.17. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (quoting *Baker*, 443 U.S. at 146); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 n.15 (2005); *Covington Cty. Sch. Dist.*, 675 F.3d at 858. Plaintiffs must also demonstrate that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Davidson*, 474 U.S. at 348; *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

Moreover, to hold the Officers liable under the statute, Plaintiffs must adduce facts demonstrating the Officers' participation in the alleged wrong. A § 1983 plaintiff must establish not only a violation of one of his or her constitutional rights but must also show a causal connection between the deprivation of that right and the actions of the defendant against whom relief is sought. *Iqbal*, 556 U.S. at 676 (stating that a § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Reimer v. Smith*, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property."); *see Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 867-68 (S.D. Tex. 2014).

Plaintiffs allege that Cherry and Rowe, after being told by Medical Center staff that Manuel must remove his clothing and put on a medical gown, instructed Manuel's family and a nurse to leave Manuel's room so that they could "take care of the situation." Despite the contention that Manuel was calm and docile up to that point, a struggle ultimately arose between Manuel, Cherry, and Rowe. According to Plaintiffs, Cherry and Rowe struck and tased Manuel, pinning him against the wall. Eventually, the altercation spilled out into the hallway, where Rowe and Cherry allegedly dragged Manuel on his back out of the room. Both Cherry and Rowe are then alleged to have climbed onto Manuel's back and taken him to the ground from a standing position. Manuel purportedly did not move after hitting the floor. Next, Plaintiffs allege that Cherry placed Manuel in a chokehold and Rowe pinned him to the floor with his full body weight. At that point, according to Plaintiffs, Cater, Meaux, and Harper arrived and, despite Manuel's being handcuffed, not moving, and apparently unconscious, also applied their full body weight to Manuel's back. At the end of the twenty-minute altercation, the Officers noticed that Manuel was not breathing, and Medical Center staff unsuccessfully attempted to resuscitate him. As the Officers point out, there is no indication in Plaintiffs' account regarding what Manuel was doing during critical periods of this extended encounter. The Officers contend that the events alleged do not sufficiently state a claim for the use of excessive force and also assert that Plaintiffs' claims are barred by the Officers' qualified immunity. At the pleading stage, the proper procedural framework for addressing a § 1983 claim is first to determine whether Plaintiffs have sufficiently pleaded the elements of a constitutional violation; only then does the court proceed to the qualified immunity analysis. *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

1. <u>Excessive Force</u>

Under the United States Constitution, there is no doubt that a person has the right to be free from the use of excessive force, and "it [is] clearly established the amount of force officers [can] use depend[s] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)), *cert. denied*, 559 U.S. 1048 (2010); *accord Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012), *cert. denied*, 571 U.S. 826 (2013); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The Supreme Court of the United States has made clear that "*all* claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than a 'substantive due process' approach [under the Fourteenth Amendment]." *Graham*, 490 U.S. at 395; *Brothers v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1229 (2017); *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir.), *cert. denied*, 135 S. Ct. 137 (2014); *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001). As the Supreme Court commented in *Graham*: "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. at 395.

To succeed on an excessive force claim arising under the Fourth Amendment, a § 1983 plaintiff "must establish: (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable." *Harris*, 745 F.3d

at 772 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); *accord Brothers*, 837 F.3d at 518 (holding that to succeed on an excessive force claim under the Fourth Amendment, the plaintiff must demonstrate "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force was objectively unreasonable" (quoting *Hogan v. Cummingham*, 722 F.3d 725, 734 (5th Cir. 2013))); *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir 2016); *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013). If any of the three elements fails, the plaintiff's claim of excessive force will not succeed. *Huong v. City of Port Arthur*, 961 F. Supp. 1003, 1006 (E.D. Tex. 1997).

Plaintiffs plainly satisfy the injury prong, as the court determined from their previous, and much sparer, complaint. Manuel was alive prior to the altercation, and it may be reasonably inferred, based on Plaintiffs' factual allegations, that Manuel died directly and only as a result of the altercation with the Officers. It is troubling, however, that the manner and medical cause of death were ultimately determined to be unknown, as reflected in the Custodial Death Report maintained by the Attorney General of the State of Texas, a public record attached as Exhibit A to Plaintiffs' Response. The Officers argue that the pleadings do not directly link any individual's actions to any specific injury—the complaint refers to Rowe and Cherry as acting in concert inside the room, and, outside the room, Cater, Meaux, and Harper are similarly alleged to have acted as a group. At the 12(b)(6) stage, however, the United States Court of Appeals for the Fifth Circuit does not require "a [§] 1983 plaintiff to plead facts 'peculiarly within the knowledge of defendants' in order to survive a motion to dismiss." *Crisp v. Dutton*, No. A-15-CV-0431-LY-ML, 2015 WL 7076483, at *8 (W.D. Tex. Nov. 12, 2015) (quoting *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432

(5th Cir. 1995))).  This issue is not fatal to Plaintiff's claims at this juncture, as their pleadings are sufficiently detailed to state a plausible, cognizable claim that Manuel suffered an injury caused by the Officers.

The parties disagree as to whether the court may consider the entire Autopsy Report, attached to the Officers' Motion to Dismiss, or just the excerpt detailing Manuel's injuries included in the Complaint.  The Officers assert that the autopsy's inconclusive cause of death finding shows that their actions were not the direct and only cause of Manuel's death.  At a minimum, the excerpt set forth in the Complaint shows that Manuel suffered *some* injuries as a result of the Officers' actions (evidence of subgaleal hemorrhage; puncture wounds on his abdomen surrounded by tan and blistered skin; abrasions on his right temple, torso, arms, and left ankle), and it is reasonable to infer from the pleadings that at least some, if not all, of these injuries resulted directly and only from the alleged activities of the Officers (striking, tasing, application of body weight).  Thus, it is immaterial whether the court considers only Plaintiffs' excerpt detailing Manuel's injuries or the entire report including the inconclusive cause of death, as either version sufficiently establishes that Manuel suffered an injury.

The central question is whether Plaintiffs have pleaded facts that plausibly suggest the Officers' conduct was clearly excessive and objectively unreasonable.  "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978)); *accord Brothers*, 837 F.3d at 519; *Poole*, 691 F.3d at 628.  "Objective reasonableness is a matter of law

for the courts to decide, not a matter for the jury." *Kipps v. Callier*, 197 F.3d 765, 769 (5th Cir. 1999) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.), *clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999)).

"Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case.'" *Newman*, 703 F.3d at 761 (quoting *Graham*, 490 U.S. at 396); *accord Orr*, 844 F.3d at 492; *Deville,* 567 F.3d at 167. In gauging the objective reasonableness of the force used by a law enforcement officer, [the court] must balance the amount of force used against the need for that force." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (citing *Spann v. Raney*, 978 F.2d 1110, 1115 (5th Cir. 1993)); *accord Deville*, 567 F.3d at 167; *Francis v. Harris Cty.*, No. H-14-2943, 2016 WL 6662275, at *13 (S.D. Tex. Nov. 10, 2016) (citations omitted). "[A] constitutional violation does not occur every time an officer touches someone." *Ikerd*, 101 F.3d at 434. Importantly, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). Nevertheless, "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)); *accord Newman*, 703 F.3d at 763. Thus, "[w]hen dealing with an uncooperative suspect, police officers act within the scope of objective reasonableness when they 'react[ ] with measured and ascending responses.'" *Orr*, 844 F.3d at 493 (quoting *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)).

Furthermore, the determination of whether a particular use of force was reasonable under the Fourth Amendment "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97; *Brothers*, 837 F.3d at 518; *Cass*, 814 F.3d at 731; *accord Newman*, 703 F.3d at 762; *Poole*, 691 F.3d at 628. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *Brothers*, 837 F.3d at 518-19; *Cass*, 814 F.3d at 731; *accord Wagner v. Bay City*, 227 F.3d 316, 321 (5th Cir. 2000) (holding that courts should be "careful not to engage in second-guessing officers in situations in which they have to make split-second, on-the-scene decisions while confronted with a violent individual").

As the Supreme Court commented in *Graham*: "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985))); *accord Brothers*, 837 F.3d at 518; *Ramirez*, 716 F.3d at 377; *Newman*, 703 F.3d at 761. These factors are commonly referred to as the *"Graham* factors." *Ramirez*, 716 F.3d at 377.

The clearly excessive and objectively unreasonable prongs are often collapsed together as a "single objective-reasonableness inquiry" utilizing the *Graham* factors. *Peña*, 879 F.3d at 619

(citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). As Plaintiffs allege that the individual officers named in this action participated in different ways, the Officers' alleged conduct must be analyzed separately. *Id.* (citing *Kitchen v. Dallas Cty.*, 759 F.3d 468, 480 (5th Cir. 2014)); *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018); *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000) ("in a section 1983 action, the conduct of each defendant who has been sued in his individual capacity should be examined separately." (citing *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999))).

a.    Rowe and Cherry

Plaintiffs allege that Rowe and Cherry, upon learning that the Medical Center required Manuel to be in a medical gown and nothing else, cleared Manuel's examination room of his family and a nurse who was helping Manuel remain calm. Once alone in the room with Manuel, Plaintiffs assert that Rowe and Cherry tased and struck him, and one of them pinned him against the wall. All of this was allegedly audible from outside the room and was seen intermittently as the struggle pushed aside the curtains of the examination room. Rowe and Cherry allegedly pulled Manuel out into the hallway and then took him to the ground from a standing position, at which point he hit the floor and stopped moving. Cherry then purportedly placed Manuel in a chokehold, and Rowe pinned Manuel to the ground with his full body weight.

Cherry and Rowe argue that Plaintiffs' failure to describe Manuel's actions inside the examination room means the court cannot determine whether any force they used was excessive under the circumstances. They instead direct the court to the Custodial Death Report about this incident, attached to Plaintiffs' response, which states that Manuel became violent and combative, initiated the altercation by assaulting one of the officers, and then attempted to take one of the

officer's pepper spray and duty weapon. Cherry and Rowe argue that these alleged actions justified their use of force. At the 12(b)(6) stage, however, Plaintiffs' "well-pleaded factual allegations enjoy a presumption of truth." *Peña*, 879 F.3d at 620, n. 9. In *Peña*, the Fifth Circuit held that a plaintiff who was tased while running from the police had stated a cognizable claim for excessive force, as her complaint included a plausible allegation that she was not a criminal suspect when she fled, despite that characterization being contradicted by police reports that the plaintiff attached to her own complaint. *Id.* at 620. This situation is analogous. Because the Complaint contradicts the report, "we presume only that the officers made the assertions contained in the report, not that those assertions are in fact truthful." *Id.* Given this standard, Plaintiffs have sufficiently pleaded that Manuel initially was not under arrest or suspected of committing any crime. Failing to remove his shorts to put on a hospital gown is not a crime, nor does it pose an immediate threat to the safety of any individual or officer. Nevertheless, the Custodial Death Report indicates that at some time during the incident, the decedent threatened the Officers, tried to escape/flee from custody, resisted being handcuffed or arrested, and grabbed, hit, or fought with the Officers. The Fifth Circuit has established that, in situations involving non-compliant subjects, police officers must use "'measured and ascending' actions that [correspond to a subject's] escalating verbal and physical resistance." *Poole*, 691 F.3d at 629 (quoting *Galvan*, 435 F. App'x at 311). Further, a reasonable officer would have known the amount of force that could reasonably be used is directly linked to the danger presented. *See Scott*, 550 U.S. at 383-84; *Deville*, 567 F.3d at 169; *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). Taking Plaintiff's well-pleaded facts as true, and in light of this standard, the use of force alleged, given the circumstances, was arguably objectively unreasonable and thus excessive. In view of the

*Graham* factors, the 12(b)(6) standard of review, and Fifth Circuit precedent, Plaintiffs have stated cognizable excessive force claims against Rowe and Cherry.

b.      Cater, Meaux, and Harper

Plaintiffs present only one factual ground for an excessive force claim against Officers Cater, Meaux, and Harper: despite Manuel's being still, and already restrained in handcuffs, with Cherry allegedly applying a chokehold and Rowe pinning him to the floor with his full weight, the Officers proceeded to place their full weight onto Manuel's back.  This allegation plausibly suggests objective unreasonableness.  "[O]nce an arrestee stops resisting, the degree of force an officer can employ is reduced." *Peña*, 879 F.3d at 619 (quoting *Cooper v. Brown*, 844 F.3d 517, 523-34 (5th Cir. 2016)); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012).  After a suspect is subdued or demonstrates compliance, "it is unreasonable to use force." *Shumpert v. City of Tupelo*, 905 F.3d 310 (5th Cir. 2018).  It is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005).  Applying "substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force." *Id.* (discussing *Simpson v. Hines*, 903 F.2d 400 (5th Cir. 1990)).  "Moreover, there is a well-developed body of case law in the Fifth Circuit specifically holding that the use of physical force against a restrained, passively resisting or non-resisting subject violates the constitution." *Salcido as Next of Friend of K.L. v. Harris Cty., Tex.*, No. H-15-2155, 2018 WL 6618407 (5th Cir. Dec. 18, 2018) (citing *Bush*, 513

F.3d at 501; *Williams*, 180 F.3d at 704).  As pleaded, Cater, Meaux, and Harper's use of force on a non-struggling, incapacitated Manuel appears to be objectively unreasonable.

Cater, Meaux, and Harper argue that "piling on" is not *per se* a Fourth Amendment violation, citing *Castillo v. City of Round Rock*, 177 F.3d 977, 1999 WL 195292 (5th Cir. Mar. 15, 1999), *cert. denied*, 528 U.S. 1029 (1999).  In *Castillo*, an officer and a bystander "climbed atop" a criminal suspect who was resisting arrest while other officers placed flex cuffs on the suspect's appendages.  *Id.* at *1.  The suspect did not stop moving until after being shackled and was then discovered to be unconscious.  *Id.* at *2.  The Fifth Circuit held that because the suspect was actively resisting arrest in a manner that could be interpreted as hostile, even if his resistance was actually just a panicked reaction to choking, the individuals did not behave unreasonably by placing him in a prone position and incapacitating him by climbing on his back.  *Id.* at *3.  The current case is distinguishable.  Here, Plaintiffs pleaded that the three Officers arrived *after* Manuel was not moving, handcuffed, and not offering any resistance, yet they still proceeded to apply their full weight to Manuel's body despite Cherry's having him in a chokehold and Rowe's pinning him to the floor with his body weight.

The balance of the cases cited by the Officers involve hog-tying (which the Officers acknowledge is not alleged here), a resisting suspect (thus marked by the same dinstinction as *Castillo*), or both.  As such, all of these cases are also distinguishable and fail to establish that the Officer's actions were objectively reasonable.  In light of Fifth Circuit precedent regarding the use of force on incapacitated subjects, the court concludes that Plaintiffs' pleadings state a cognizable claim against Officers Cater, Meaux, and Harper for the use of excessive force.

2.    Qualified Immunity

Having determined that Plaintiffs have sufficiently pleaded a Fourth Amendment excessive force claim against all five officers, the court now turns to whether these claims are barred by qualified immunity.  In claims against state and local government officials under 42 U.S.C. § 1983, the official may raise the affirmative defense of qualified immunity.  *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016).  Qualified immunity is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Brothers*, 837 F.3d at 518; *Hinojosa v. Livingston,* 807 F.3d 657, 663 (5th Cir. 2015); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003).  "[Q]ualified immunity means immunity from having to stand trial, not simply immunity from monetary liability."  *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)); *see White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 551-52 (2017) (quoting *Pearson*, 555 U.S. at 231); *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 555 U.S. at 231; *see Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (quoting *Pearson*,

555 U.S. at 231); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mendez v. Poitevant*, 823 F.3d 326, 331 (5th Cir. 2016); *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014); *accord White*, 137 S. Ct. at 551; *Cass*, 814 F.3d at 728. "To properly raise a qualified immunity defense, '[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority.'" *Holcomb v. McCraw*, 262 F. Supp. 3d 437, 446 (W.D. Tex. 2017) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997) (citing *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)), *cert. denied*, 522 U.S. 1125 (1998); *see Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004). In this situation, the Officers' actions were not taken pursuant to "specific orders, or spelled out in minute detail beforehand." *Tamez*, 118 F.3d at 1092; *see Beltran*, 367 F.3d at 303-04. Instead, their actions fell "within the realm of discretionary decisions police officers commonly make." *Tamez*, 118 F.3d at 1092.

Although normally considered an affirmative defense, the Officers may raise qualified immunity in a Rule 12(b)(6) motion; however, they may prevail only if their entitlement to qualified immunity plainly appears based on the facts alleged in the complaint. *Morgan v. Swanson*, 659 F.3d 359, 400 (5th Cir. 2011), *cert. denied*, 567 U.S. 905 (2012); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 289-91 (5th Cir. 2015); *see also* 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2018). "When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the [c]ourt must determine whether 'the plaintiff's pleadings assert facts which, if true, would overcome the

defense of qualified immunity.'" *Donahue v. Strain*, No. 15-6036, 2017 WL 3311241, at *16 (E.D. La. Aug. 3, 2017) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)); *see, e.g.*, *Hall v. Tex. Comm'n on Law Enf't*, No. 6:15CV803, 2016 WL 5417209, at *4 (E.D. Tex. Aug. 16, 2016). Accordingly, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Thus, while the Officers are entitled to qualified immunity if their conduct was objectively reasonable, at this juncture, any underlying factual disputes must still be resolved in favor of Plaintiffs, the nonmoving party. *See McClendon*, 305 F.3d at 323 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (noting that at the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'"); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 449-50 (5th Cir. 1998); *Khansari*, 14 F. Supp. 3d at 856-57; *see also Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987). "[A]s with all Rule 12(b)(6) motions, . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) ("[A] 12(b)(6) motion for dismissal on the grounds of qualified immunity [may be allowed], but only if it is supported by the allegations of the complaint itself."); *Saenz v. G4S Secure Sols. (USA), Inc.*, 224 F. Supp. 3d 477, 481 (W.D. Tex. 2016). "[T]he complaint should generally not be dismissed for failure to state a claim because the issue of whether immunity applies is a factual question related to the merits." *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 250 (1974)).

"Whether a government official is entitled to qualified immunity 'generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991) (quoting *Anderson*, 483 U.S. at 639)); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 823 (5th Cir. 2007), *cert. denied*, 562 U.S. 897 (2010). In considering a claim of qualified immunity, the court must utilize a bifurcated approach, asking first "whether the facts taken in the light most favorable to the party asserting the injury show the [defendant's] conduct violated a federal right;" and second, "whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred." *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *accord Tolan v. Cotton*, 572 U.S. 650, 655-57 (2014) (citing *Saucier*, 533 U.S. at 201); *Brothers*, 837 F.3d at 517; *Cass*, 814 F.3d at 728 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *Machete Prods., L.L.C.*, 809 F.3d at 289. The court may consider these factors in any order. *al-Kidd*, 563 U.S. at 735; *Orr*, 844 F.3d at 492 (citing *Pearson*, 555 U.S. at 236).

"The first prong requires the plaintiff to allege 'the deprivation of an *actual* constitutional [or statutory] right.'" *Hampton*, 480 F.3d at 363 (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *see Orr*, 844 F.3d at 492. The court must "assess whether a statutory or constitutional right would have been violated on the facts alleged." *Griggs*, 841 F.3d at 308 (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)); *accord Haverda*, 723 F.3d

at 598 (citing *Lytle v. Bexar Cty.*, 560 F.3d 404, 409-10 (5th Cir. 2009), *cert. denied*, 559 U.S. 1007 (2010)).

Under the second prong, "a clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see Brosseau*, 543 U.S. at 198-99; *Wilkerson*, 774 F.3d at 851. As the Supreme Court has stated, "[w]hile this Court's case law 'does not require a case directly on point for' a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 136 S. Ct. at 308). In other words, "the clearly established law must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of generality.'" *Id.* (citing *Anderson*, 483 U.S. at 640; *al-Kidd*, 563 U.S. at 742); *see Cass*, 814 F.3d at 733 (finding a general statement that "citizens are protected against unjust, excessive police force" insufficient to show that the law was clearly established). Thus, "the salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 572 U.S. at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see White*, 137 S. Ct. at 552 ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in light of pre-existing law the unlawfulness must be apparent"); *Cass*, 814 F. 3d at 728. "In excessive force cases, 'the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs*, 841 F.3d at 313 (citing *Tarver v. City of Edna*,

410 F.3d 754, 750 (5th Cir.), *cert. denied*, 546 U.S. 1007 (2005)). If more than one officer was involved in the incident in question, each officer's actions must be examined individually to determine whether the officer is entitled to qualified immunity. *Pratt v. Harris Cty.*, 822 F.3d 174, 181 (5th Cir. 2016) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)).

At the time of the incident in question, Manuel had a clearly established constitutional right to be free from the use of excessive force by a police officer in the course of an arrest, investigatory stop, or other seizure. *See*, *e.g.*, *Graham*, 490 U.S. at 394-95; *Griggs*, 841 F.3d at 312 (citing *Poole,* 691 F.3d at 627). The Fourth Amendment provides:

> The right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause . . . .

U.S. CONST. amend. IV. As discussed above, the court has concluded that Plaintiffs have pleaded sufficient facts from which it could be reasonably inferred that the Officers' alleged actions arguably violated Manuel's Fourth Amendment right to be free from excessive force.

As for the second prong, "if reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (quoting *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)); *accord Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)); *Johnston*, 14 F.3d at 1059; *see Malley*, 475 U.S. at 341; *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996). "The second prong 'focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place.'" *Felton*, 315 F.3d at 478 (quoting *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997)); *accord Mullenix*,

136 S. Ct. at 308 ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."). "A 'defendant's acts are . . . objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'" *Felton*, 315 F.3d at 478 (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original)).

"[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley*, 475 U.S. at 341); *accord White*, 137 S. Ct. at 551. Hence, government officials may be accorded qualified immunity "if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994). An "officer could make a constitutionally reasonable judgment based on a factual misperception." *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998), *cert. dismissed*, 526 U.S. 1083 (1999). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker*, 443 U.S. at 145; *see Sorenson v. Ferrie*, 134 F.3d 325, 328 n.3 (5th Cir. 1998).

As the court determined above, it could be reasonably inferred that the Officers' actions were arguably objectively unreasonable based on Plaintiffs' Complaint, the *Graham* factors, and Fifth Circuit precedent. Here, the second prong of the qualified immunity analysis presents a substantially similar, but slightly different, question: were the Officers on notice that their behavior, as alleged by Plaintiffs, violated Manuel's constitutional rights? While the Officers

correctly argue that a chokehold and applying pressure to a subject's back are not *per se* constitutional violations, taking Plaintiffs' allegations as true, the Officers would have been on notice that their actions arguably violated Manuel's constitutional rights. As stated above, the Fifth Circuit has repeatedly held that the use of force after a subject stops resisting or is subdued is excessive; thus, Cater, Meaux, and Harper were on notice that any force applied to a still and handcuffed subject could be excessive and thus a constitutional violation. *See infra* Sect. II.B.1.b. As for Rowe and Cherry, the Fifth Circuit has also held that, in contexts where a subject is not a danger to others, resisting arrest, or trying to flee, the officers were on notice that striking, tasing, or pinning a subject to the wall or the ground would be excessive and violate that subject's Fourth Amendment rights. *See Bush*, 513 F.3d at 492; *see also infra* Sect. II.B.1.a. The court notes, however, that many of these assumptions appear to be undermined by the Custodial Death Report proffered by Plaintiffs.

Plaintiffs' factual allegations, if true, not only state a cognizable excessive force claim under the *Graham* factors and Fifth Circuit precedent, but also overcome the Officers' qualified immunity defense to such a claim. If the events transpired as Defendants allege, however, and as set forth in the Custodial Death Report, the use of excessive force is questionable. In any event, Plaintiffs do not provide sufficient factual specificity for the court to analyze each officer's conduct individually; hence, the court is unable to determine which individual officers might be entitled to qualified immunity. *See Backe*, 691 F.3d at 648. As stated above, the court must look at each individual defendant's actions independently to determine if he is entitled to qualified immunity. *Newman*, 703 F.3d at 762 (citing *Meadours*, 483 F.3d at 421-22). Plaintiffs acknowledge as much in their complaint: the altercation "broke out between [Cherry, Rowe, and Manuel] behind closed

doors, such that it was largely impossible for plaintiffs to know what specifically happened in the room prior to conducting discovery." While initial disclosures appear to have led to a much more detailed complaint compared to the original, questions remain as to what specific actions were taken by each officer.

The Fifth Circuit allows a qualified immunity ruling to be deferred for further factual development, if such development is necessary to determine if that defense is available. *See Backe*, 691 F.3d at 648 (citing *Wicks v. Miss. State Employ't Servs.*, 41 F.3d 991, 994-95 (5th Cir.), *cert. denied*, 515 U.S. 1131 (1995)). Once the court determines that Plaintiffs' allegations state a claim sufficient to overcome a qualified immunity defense, yet "remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Id.* (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)). Accordingly, discovery may proceed on the limited issue of which of the individual officers were involved in the specific acts of alleged excessive force and whether each individual officer is entitled to qualified immunity. Such discovery must be narrowly tailored to the issue of whether the conduct at issue was objectively reasonable under the circumstances that existed at the time of the incident. *See Webb v. Livingston*, 618 F. App'x 201, 209-10 (5th Cir. 2015). Should discovery lead to the conclusion that there is no genuine issue of material fact as to any individual officer's qualified immunity, there will be no procedural or substantive barrier to the filing of a motion for summary judgment on the issue of qualified immunity. Therefore, the court DEFERS its ruling on the Officers' qualified immunity defense, finding that limited discovery is necessary to resolve the issues surrounding qualified immunity.

C.    Claims Against the City

The Complaint states two claims against the City:  (1) that the City failed to train and supervise officers regarding de-escalation and crisis intervention techniques resulting in the depravation of Manuel's constitutional rights, and (2) that the City's alleged policy and custom of dispatching non-CIT trained officers to scenes that would demand such expertise caused the Officers to use unreasonable and excessive force that violated Manuel's constitutional rights.  The City moves to dismiss both claims against it, averring that it cannot be held vicariously liable for the Officers' actions and that Plaintiffs have failed to demonstrate deliberate indifference on the City's part or that the City had an unconstitutional policy or custom that resulted in the deprivation of Manuel's constitutional rights.

At the outset, the court dispenses with the City's contention that it cannot be held liable under § 1983 because Plaintiffs have not pleaded that a constitutional violation occurred.  As the court has determined above, Plaintiffs have sufficiently pleaded a cognizable claim that Manuel suffered a deprivation of his constitutional right to be free from the use of excessive force.

1.    Failure to Train Claim

In order to hold a municipality liable under § 1983 for failure to train or supervise, the plaintiff must show that:  "(1) the [city] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."  *Peña*, 879 F.3d at 623 (quoting *Thompson*, 245 F.3d at 459); *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 811 (5th Cir.), *cert. denied*, 138 S. Ct. 510 (2017) (citing *Kitchen*, 759 F.3d at 484 (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366,

381 (5th Cir. 2010))); *Clyce v. Hunt Cty.*, 515 F. App'x 319, 323 (5th Cir.), *cert. denied*, 571 U.S. 955 (2013); *Conner v. Travis Cty.*, 209 F.3d 794, 796 (5th Cir. 2000). "The failure to provide proper training [or supervision] may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001)), *cert. denied*, 563 U.S. 935 (2011); *see, e.g.*, *Peña*, 879 F.3d at 623; *Clyce*, 515 F. App'x at 323. Furthermore, "a plaintiff must allege with specificity how a particular training program is defective." *Westfall*, 903 F.3d at 552 (quoting *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010)).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. The failure to train, however, "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is "a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 219 F.3d at 457 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. at 410); *see Valle*, 613 F.3d at 547 ("Deliberate indifference is more than negligence or even gross negligence."). "When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61; *accord Cardenas v. Lee Cty.*, 569 F. App'x 252, 257 (5th Cir. 2014). Importantly,

a governmental entity's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *Cardenas*, 569 F. App'x at 257.

Plaintiffs allege that the City did not provide officers de-escalation and crisis intervention techniques training ("CIT training") for interacting with persons with mental impairments. They allege that a 2005 Texas state law requiring officers to undergo such training put the City's policymakers on notice that the City's training policy was insufficient. Plaintiffs contend that the City's deliberate indifference to providing officers this state-mandated training caused the defendant officers to resort to unreasonable and excessive force by treating Manuel as a criminal resisting arrest rather than as a person with mental impairments, which was a violation of Manuel's constitutional rights.

The City argues that the Complaint is conclusory and fails to establish causation and deliberate indifference. It maintains that Plaintiffs have not identified any policymaker who knew the alleged lack of training would cause, or had caused, any previous constitutional violations. The City argues that the Texas statute requiring such training places that burden on the Texas Commission on Law Enforcement ("TCOLE"), not the City, and that even if a statutory violation were found, that does not equate to a constitutional violation. Further, the City points out that Plaintiffs concede that two of the City's officers have the training, which indicates that the City has conducted such training.

### a.   Failure to Train

Plaintiffs' allegations satisfy the first prong. They allege that the named Officers did not receive the state-mandated training and that only two of the City's officers have received such

training.  These facts are sufficient, particularly under the 12(b)(6) standard, to infer that the City

failed to train the involved officers adequately.  *See Brown*, 219 F.3d at 462 ("The failure to

provide proper training may fairly be said to represent a policy for which the city . . . may be held

liable . . . ." (quoting *City of Canton*, 489 U.S. at 390)); *Gomez v. City of Pharr*, No. 7:18-cv-

342, 2019 WL 448898 (S.D. Tex. Feb. 5, 2019) (holding that plaintiff demonstrated an inadequate

training policy by alleging that municipality did not ensure officers received training mandated by

Texas Occupations Code 1701.253).  The City argues that Plaintiffs do not identify a policymaker

or an established policy not to train officers in techniques related to interactions with mentally

disabled persons.  At the 12(b)(6) stage, however, "the specific identity of the policymaker is a

legal question that need not be pled; the complaint need only allege facts that show an official

policy, promulgated or ratified by the policymaker, under which the municipality is said to be

liable." *Groden*, 826 F.3d at 284; *Kremelberg v. Keeling*, No. 3:15-CV-3695-K-BH, 2016 WL

7744408, at *8 (N.D. Tex. Dec. 12, 2016), *adopted by* 2017 WL 131822, at *1 (N.D. Tex. Jan.

12, 2017).

Similarly, Plaintiffs' allegation that only two of the City's police officers had received the

state-mandated CIT training suggests that inadequate training existed within the ranks of the police

department.  The City also argues that because these two officers received the training, it shows

that the municipality did, in fact, offer the training.  Conversely, the same evidence suggests that

the City *knew* this training was required, but *still* failed to comply with the mandate throughout

the force.  If anything, it underscores the inadequate training of the City's police force.  The City

also argues that its failure to comply with state law does not equate to a constitutional violation.

While this is accurate, it similarly misses the point:  the constitutional violation at issue is the

33

alleged excessive force purportedly exerted by the Officers, not the failure to comply with state law. This lack of compliance, however, could support a "failure to train" finding. *Zarnow*, 614 F.3d at 170. Plaintiffs do not seek to hold the City accountable for non-compliance with Texas law, but rather to hold it responsible for a constitutional violation allegedly stemming from the lack of adequate training.

b.    <u>Causation</u>

Plaintiff's allegations are also sufficient to draw a causal connection between the purported failure to train and an ostensible violation of Manuel's rights. Plaintiffs have demonstrated that Manuel was a mentally-impaired individual who was suffering from a mental health crisis when engaged in an altercation with the Officers. According to Plaintiffs, had the Officers received CIT training, as mandated by state law, they could have relied on those techniques rather than escalating the situation, as the Complaint alleges. As such, the alleged connection between the City's training policy and Manuel's injuries is sufficient to plead causation under the 12(b)(6) standard.

c.    <u>Deliberate Indifference</u>

As for the deliberate indifference to the plaintiff's constitutional rights prong, the City argues that Plaintiffs have failed to plead that the City was aware of non-compliance with state law or that the lack of CIT training would or could result in an incident of excessive force, much less demonstrate a pattern of constitutional violations that would have put the City's policymakers on notice. In their response, Plaintiffs assert not only that this single incident is sufficient to establish deliberate indifference, but also proffer five other instances of custodial deaths involving the Port Arthur Police. In their reply, the City argues that these instances are not factually similar to the

instant case and would not have put the City on notice that the lack of state-mandated training was depriving persons of their constitutional rights. Further, these instances span a nearly twenty-year period, with only two occurring in or after 2005, when Texas law mandated CIT training.

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547 (quoting *Brown*, 219 F.3d at 457). While "deliberate indifference describes a state of mind more blameworthy than negligence . . . , it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. It connotes conscious disregard for known or obvious consequences. *See Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 413 n. 1. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.

To establish that the City was deliberately indifferent to Manuel's constitutional rights, Plaintiffs must show that the inadequacies in the City's police training were "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Valle*, 613 F.3d at 547 (quoting *City of Canton*, 489 U.S. at 390). "'A pattern of similar constitutional violations by untrained employees is ordinarily' required to show deliberate indifference." *Peña*, 879 F.3d at 623 (citing *Connick*, 563 U.S. at 62). The prior acts and violations establishing such a pattern must be similar and specific; they must "point to the specific violation in question" and "be fairly similar to what ultimately transpired . . . ." *Hicks-Fields*, 860 F.3d at 810 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

The City argues that the five instances of custodial deaths proffered by Plaintiffs are insufficient to establish a pattern of actual constitutional violations. The court agrees. First, one of the instances is Manuel's demise, which is at issue here, and, thus, could not be part of a pattern of violations that would have put the City on notice *prior to* Manuel's death. *See Valle*, 613 F.3d at 548 (citing *Estate of Davis*, 406 F.3d at 383) (stating that the deliberate indifference standard requires a showing of previous similar constitutional violations that establish the municipality consciously chose to endanger constitutional rights). Second, it is unclear from Plaintiffs' pleadings and the attached exhibits that these instances of custodial deaths involved constitutional violations. In the 1994 incident, the deceased was reported to have lunged at an officer with a butcher knife before being shot by officers. The facts surrounding the 1984 incident are similarly bare, indicating that the deceased was exhibiting mental health problems and charged an officer with a knife and a hatchet prior to being shot. The 2013 incident does not denote that the deceased was exhibiting mental health problems. While this could *potentially* be inferred from the description of the event, such inferences are a bridge too far, even for the lenient 12(b)(6) standard. Upon officers' arrival at her residence, the decedent was threatening her family with a 7-inch knife, which she refused to put down despite officers' repeated commands and a taser deployment. When she raised the knife toward one of the officers, she was shot once in the hand and died. The same may be said of the 2005 incident, in which the deceased's reported behavior *could* be associated with mental health issues, but the deceased's drug use clouds the reasonableness of that inference. After removing his clothes in a parking lot, screaming, and charging at the officers, the decedent refused the officers' commands, and a taser deployment had no effect. He then fell over a pile of trash, continued to kick, and was able to throw officers off

his back before he was wrestled to the ground. His manner of death was reported to be a medical condition only (heart attack) and his cause of death to be cocaine toxicity. Nevertheless, even if the court were to assume that all of these instances involved persons experiencing mental health crises, they are too factually deficient to infer that the force used by the officers was sufficiently excessive to give rise to a constitutional violation. *See id.* (requiring more specificity about prior instances to establish a pattern that illustrates deliberate indifference) (citing *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006); *Estate of Davis*, 406 F.3d at 383). As such, the court concludes that Plaintiffs have failed to establish a pattern of constitutional violations sufficient to show that the City was deliberately indifferent to the risk of the use of excessive force by officers untrained in CIT tactics on persons with mental illnesses or experiencing mental health crises.

In the absence of a pattern, in certain unique circumstances, a plaintiff can establish liability based upon a single violation of constitutional rights. *Connick*, 563 U.S. at 63; *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008); *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) (quoting *Snyder*, 142 F.3d at 798). "The single incident exception requires proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Gabriel*, 202 F.3d at 745 (citing *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 409). The "single-incident" method of proving deliberate indifference is generally reserved "for cases in which the government actor received 'no training whatsoever' with respect to the relevant constitutional duty, as opposed to training that is inadequate only as to the particular conduct that gave rise to the plaintiff's injury." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 625 n.5 (5th Cir. 2018) (citations omitted); *Peña*, 879 F.3d at 624. Indeed, this exception applies only where the need for training was "so

obvious" that a failure to do so would mean that the policymaker was deliberately indifferent to constitutional rights. *City of Canton*, 489 U.S. at 390; *see Waltman*, 535 F.3d at 350. The need for additional training is considered sufficiently obvious only when the deprivation of constitutional rights is a "highly predictable consequence" of the training deficiency. *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 409; *accord Sanders-Burns*, 594 F.3d at 381.

Plaintiffs rely on *Allen v. Muskogee*, a Tenth Circuit failure-to-train case in which that court denied a city's motion for summary judgment after determining that the plaintiffs had established deliberate indifference by presenting other direct evidence of inadequate training along with the single incident at issue in the case. 119 F.3d 837, 745 (10th Cir. 1997). The court notes that *Allen* is not binding precedent. Nor is Plaintiffs' articulation of their reliance on *Allen* persuasive. The Fifth Circuit has a well-developed body of case law regarding deliberate indifference, which suggests that the single incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624 (holding that single incident could not establish deliberate indifference to adequate taser training where complaint acknowledged that officers received *some* form of taser training) (collecting cases differentiating between a complete lack of training and failure to train in a discrete area); *cf. Littell*, 894 F.3d at 627 (finding allegations of "no training whatsoever" on conducting lawful searches sufficient to survive a 12(b)(6) motion to dismiss a failure-to-train claim). Here, Plaintiffs do not allege that the City provides *no* training on the use of force.

The court finds *Hobart v. Estrada* to be more instructive of the Fifth Circuit's interpretation of Supreme Court precedent on this issue. 582 F. App'x 348 (5th Cir. 2014). In *Hobart*, the Fifth Circuit overturned a district court's finding of deliberate indifference based on

a single incident. *Id*. at 358-59. The district court relied on *City of Canton* to conclude that, because the policymaker knew the risks of improper deadly force training, he could be found deliberately indifferent for not providing sufficient training. *Id*. at 358. This reasoning was found to be "far too expansive an application of what is supposed to be an extremely narrow rule." *Id*. Plaintiffs' reliance on *Allen* invites a similarly expansive application. While this court, like the court in *Valle*, finds "the actions and decisions of the officers involved in this unfortunate [incident] to be very troubling," Plaintiffs have not presented "sufficient evidence to show that the *highly predictable consequence*" of the City's failure to provide their officers CIT training would be the death of a patient being involuntarily committed to a hospital during a mental health crisis. 613 F.3d at 550.

2.    <u>Official Policy or Custom</u>    [FORM: 1983CITY.LIA]

For § 1983 liability to attach to a municipality, a plaintiff must demonstrate three elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña*, 879 F.3d at 621 (quoting *Hicks-Fields*, 860 F.3d at 808); *see Culbertson v. Lykos,* 790 F.3d 608, 628 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 524 U.S. 820 (2001)); *accord Groden*, 826 F.3d at 283; *Zarnow*, 614 F.3d at 166.

Plaintiffs do not satisfy the first prong, as they fail to establish the existence of an official policy or custom regarding mentally-impaired persons. They claim that the City implemented a policy of dispatching non-CIT trained officers to address situations involving persons with mental impairments, that this policy was known and intentional, and that the City was deliberately indifferent to the rights and welfare of persons with mental impairments. The Complaint does not

include any factual specifics to support these claims outside of the City's failure to dispatch CIT-trained officers to handle the situation involving Manuel and his family.

The Supreme Court has expressly held that municipalities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see Collins v. City of Harker Heights*, 503 U.S. 115, 120-21 (1992); *Zarnow*, 614 F.3d at 166. A municipality may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91; *accord Zarnow*, 614 F.3d at 166. The Fifth Circuit has defined an official policy or custom as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)); *accord Cox v. City of Dallas*, 430 F.3d 734, 748-49 (5th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d at 309; *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003), *cert. denied*, 540 U.S. 1108 (2004).

At the 12(b)(6) stage, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City,* 130 F.3d 162, 167 (5th Cir. 1997)). Here, Plaintiffs' complaint fails to include sufficient factual allegations to establish that the City has an official policy or custom to dispatch officers lacking CIT training to scenes involving individuals with mental impairments or experiencing a mental health crisis. Plaintiffs allege, seemingly alternatively, that the City not only instituted a policy where calls for assistance were not routed to the City's two CIT-trained officers but instead were routed to untrained officers in situations involving mentally impaired persons, but that the City also failed to institute a policy of sending only properly trained officers to situations necessitating a CIT-trained officer. Plaintiffs do not cite to any officially adopted or promulgated policy, or to any pattern or sequence of events, that could allow the court to infer that the City has a policy or custom of dispatching improperly trained officers to mental health calls. While the limited number of CIT-trained officers could plant the seed of an inference that the City likely does not dispatch these officers to every CIT-related call, the complaint lacks any "factual enhancements" that would permit the court draw such an inference. *Peña*, 879 F.3d at 622 (quoting *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557)). Rather, this allegation relies solely on the incident that gave rise to Manuel's demise, which is insufficient to plead a practice "so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick*, 563 U.S. at 61).

Because Plaintiffs' claim lacks particularity that would raise the claim above the speculative level, the court cannot conclude that Plaintiffs have sufficiently stated a claim against the City for instituting a policy to dispatch only non-CIT trained officers, or alternatively, for failure to

institute a policy to dispatch CIT-trained officers to situations where their expertise is needed. Plaintiffs have also, at times, framed this claim as a failure to train dispatchers about when to dispatch CIT-trained officers. Any such claim is similarly devoid of adequate facts to survive the City's motion to dismiss. Thus, the City's motion to dismiss with regard to the above claims is GRANTED.

D.     Claims Against the Officers for Failure to Supervise

Plaintiffs further claim that the Officers "are liable for [their] failure to train and supervise their fellow officers to the extent that they were acting in a supervisory capacity by virtue of their office, position, or rank." The Officers argue that the claim is facially deficient, as it does not allege that any individual officer was a supervisor. The court agrees. A supervisor may be held liable for his personal involvement in a constitutional deprivation. *Jones v. Lowndes Cty.*, 678 F.3d 344, 349 (5th Cir. 2012). While Rowe is alleged to be a Sergeant, which may be an elevated rank or potentially a supervisory role, Plaintiffs do not allege that Rowe had any supervisory or training duties related to his title. Indeed, the Complaint does not allege that *any* of the Officers were responsible for supervision or training, or that any individual gave commands or otherwise exerted supervisory power over the others. Thus, although all of the Officers are alleged to have been involved in the incident, the court cannot conclude from the pleadings that any such involvement was in a supervisory capacity or that any individual officer had a duty to train the others. Accordingly, this claim is without foundation and is DISMISSED.

III.    Conclusion

Consistent with the foregoing analysis, Plaintiffs' § 1983 claims against the City and § 1983 failure to train and supervise claims against the Officers are DISMISSED with prejudice.[3] The court DEFERS RULING on the Fourth Amendment excessive force claims addressed in the Officers' motions to dismiss and their corresponding assertions of qualified immunity as to those claims, pending limited discovery and later reconsideration on summary judgment.

SIGNED at Plano, Texas, this 14th day of March, 2019.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[3] Defendants request that the court dismiss any Fourteenth Amendment claims against them. Plaintiffs respond that they have not pleaded any substantive due process claims and dismissal of such would be an improper advisory opinion. The court concurs—Plaintiffs' reference to the Fourteenth Amendment was in regard to excessive force claims, and, as explained above, the Fourth Amendment is the proper vehicle for such claims. As such, this dismissal includes any so-called 'Fourteenth Amendment excessive force claims,' but does not encompass any unpleaded substantive due process claims.