# EXHIBIT "P"

Officer Police Reports of Incident

**SUPPLEMENT REPORT**
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |

[ ] SUPPLEMENT     [ XXX ] INDIVIDUAL     [ ] FOLLOW-UP

COMPLAINANT:

SUSPECT:                          MANUEL DELACRUZ, H/M, 08/10/89
                                  3918 11TH STREET, PT. ARTHUR,
                                  TEXAS

DETAILS:

   On 8/1/2016 at approximately #### I, Affiant, Officer L. Cherry #445 of the Port Arthur Police Department responded to 2555 Jimmy Johnson Boulevard in reference to a family disturbance. Port Arthur Police Dispatch advised me over the police radio that the reportee was having a disturbance with their brother, Manuel Delacruz, due to the fact he suffered from paranoia and schizophrenia. The family was attempting to get Manuel to seek treatment for his mental health problems; however he was refusing to seek any treatment. Family members were at the Medical Center Emergency Room with Delacruz but he was refusing to enter the ER. One of the family members called the police asking for assistance with Delacruz. I arrived at the Medical Center Emergency Room entrance in a clearly marked Port Arthur Police Patrol vehicle and was wearing the distinctive light blue Port Arthur Police uniform. I exited my patrol vehicle and walked toward a male standing next to a brown Ford pickup truck parked at the ER entrance. As I approached the male, a female came walking toward the truck from the parking lot area. I began speaking with the male and female that were family members of Manuel. The family was watching a heavyset Hispanic male wearing a red t-shirt, and black shorts, walking in a Northeasterly direction away from the hospital. The family members advised that the Hispanic male they were watching walk away from the hospital was their brother, Manuel Delacruz. The family members were concerned that Manuel was refusing to enter the ER so he could receive medical attention for his mental health problems. Another family member who identified himself as Chuck walked up about this time. I asked what kind of behavior Manuel was exhibiting due to the fact I would need to know if Manuel was a danger to himself or others in order to issue an emergency mental commitment. The family advised me that Manuel had attempted to jump out of the vehicle they were driving as they were traveling down the interstate at approximately 80 mph the previous day. I was also advised that Manuel had been defecating on himself, refusing to eat or shower, refusing to take his medicine, and had not slept in approximately 5 days. The family went on to tell me that Manuel had gotten outside of their home the previous night and refused to come in. Manuel stayed outside under a large awning outside of a local store all night long. After hearing what Manuel's family told me, it was clear that Manuel was a danger to himself or others and needed to have an emergency committal

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 1 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:  ARREST  UNFOUNDED  INACTIVE  EXCEPT.  COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT   [ XXX ] INDIVIDUAL   [ ] FOLLOW-UP

issued so that Manuel could receive the needed medical treatment for his mental health problems. One of the family members advised that Manuel was scared of Police Officers. I told the family members that I could be as gentle with Manuel as he would let me. By the time I had all of the information about Manuel's problems relayed to me by the family, Manuel was going out of sight as he walked Eastbound on Port Plaza Drive. I got back in my patrol vehicle to catch up to Manuel to try and talk to him about coming back to the hospital. One of the males asked if he could come with me and I said yes but to stay back. I drove toward where Manuel had been walking. I advised dispatch Manuel was walking down Port Plaza Drive. As I turned onto Port Plaza Drive, I observed Manuel walking Eastbound in the Westbound lane of Port Plaza Drive next to the curb. I activated my patrol cars overhead emergency equipment and exited my patrol car to speak with Manuel. I began speaking with Manuel and began asking him to come sit down on the curb so we could talk. As we were talking I observed that we were only approximately 150 yards or so away from the US 69 feeder road and there was a high volume of traffic at that time of day. I knew I had to keep Manuel from reaching the feeder road because I felt that there would be a high possibility Manuel could enter the traffic lane and be struck by a vehicle. I continued talking to Manuel and was trying to gain some trust with Manuel so he would stop and talk to me. However, Manuel did not appear to have any interest in speaking with me. I began talking to Manuel and told him his family was concerned about him because he had been off his medicine and that he had attempted to leap from the moving vehicle the day before. Manuel simply stated that did not happen and repeatedly said he did not want to go to the ER. Manuel also asked me to leave him alone and to go away. I told Manuel that I could not leave him alone and that everyone just wanted him to get some help and get back on his medicine. Manuel appeared to be on edge as I was speaking with him so I simply tried to give him plenty of space to keep him from moving away from me and closer to the busy highway. After making several attempts to get Manuel to sit down and speak with me along with several attempts at getting Manuel to go back to the hospital Manuel stated he was leaving and began walking away from me. I had a feeling that if I would have tried to stop Manuel alone that he would become combative. Manuel said something about me wanting to kill him. I assured Manuel that I did not want to kill him and only was there trying to help him. I knew that I had multiple Officers on the way to assist me and I knew that I had some time before Manuel would be getting dangerously close to US 69. I knew that for the safety of both of us we needed to stay away from US 69. I observed that Manuel appeared to weigh approximately 300 pounds and outweighed me by 100 or more pounds. I knew that if there was any possibility for a struggle to ensue between the two of us it would be exponentially more dangerous near the roadway. I advised dispatch that I had my hands full with Manuel. I slowly walked behind Manuel as he continued East on Port Plaza Drive. We entered the parking lot of the Marriott Hotel on Port Plaza Drive. Manuel said something to the effect of getting raped and I assured him nobody was going to rape him. I

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 2 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:  ARREST  UNFOUNDED  INACTIVE  EXCEPT.  COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT    [ XXX ] INDIVIDUAL    [ ] FOLLOW-UP

advised dispatch that we were in the Marriott parking lot and that Manuel was not complying with my commands. Manuel repeatedly kept asking that I leave him alone and he continued moving away from me. I repeatedly told Manuel I could not leave him alone and kept asking him to stop and to sit down so we could talk. At some point I told Manuel if he did not stop I would have to Tase him. As we neared the hotel entrance I observed Officer Terry Cater arriving on scene and a short time later I observed Officer Jonathan Green arrive on scene. As Officer Cater was approaching the hotel, I got between Manuel and US 69 in an effort to keep Manuel from getting any closer to US 69. When I positioned myself between Manuel and US 69, Manuel simply turned around and began walking in a Northwesterly direction back toward the hospital. Officer Cater parked his clearly marked Port Arthur Police vehicle near the entrance of the hotel. Officer Cater approached me and Manuel. Officer Cater was wearing the distinctive light blue Port Arthur Police uniform. I kept telling Manuel to stop but he continued walking away from us. As me and Officer Cater got closer to Manuel, Manuel began to run away from us. With the help of Officer Cater, we were able to catch Manuel very quickly. Since Manuel had ignored all commands to stop and was non compliant, we decided to place Manuel in handcuffs. I had hold of Manuel's left arm and Officer Cater had a hold of Manuel's right arm. Officer Green and Manuel's brother arrived about the same time that me and Officer Cater caught up to Manuel. Both me and Officer Cater kept telling Manuel to stop and to put his hands behind his back. Manuel initially resisted being placed into handcuffs and there was a minimal struggle with Manuel. Manuel's brother assisted us in calming Manuel down and also assisted us with getting Manuel placed into handcuffs. Officer Green also assisted in getting Manuel in handcuffs. Due to Manuel's size it took 4 sets of handcuffs linked together to get Manuel handcuffed. Manuel was handcuffed with the cuffs linked together behind his back and his arms hanging down by his side. Manuel asked if we were bringing him to jail and also again said something about being raped. I again assured him he was not going to be raped and that we were not bringing him to jail. I told Manuel we were bringing him to the hospital so he could get some help. Another family member who had earlier identified himself as Chuck arrived at some point. Manuel was calm and Chuck thanked us for the way that we handled Manuel. Chuck went on to say that Manuel was schizophrenic. Chuck also indicated that Manuel had been an Olympic boxer when he was younger. Chuck indicated that Manuel is fine when he takes his medicine but that he had refused to take his medicine for a few days. I asked Chuck to go back to the Medical Center so I could get information from him and any other family member that had information on Manuel trying to jump out of the car the day before. Manuel was clearly a threat to his own safety. Based on all the information we had, I felt like there was enough information to do an Emergency medical hold on Manuel for his safety and the safety of his family. We began escorting Manuel toward Officer Green's patrol car to transport Manuel to the Southeast Texas Medical Center so Manuel could receive treatment for his mental health issues. As we

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 3 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:   ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT  [XXX] INDIVIDUAL  [] FOLLOW-UP

attempted to place Manuel in the backseat of Officer Green's patrol car, Manuel began to protest being placed in the car. I quickly realized that getting Manuel into the rear of the car would result in a physical struggle. To avoid any further struggle and to keep Manuel calm, I asked Officer Cater if he would walk with Manuel back to the hospital since we were not that far from the hospital. I mentioned to Officer Cater the information from Chuck that Manuel had been an Olympic boxer. As Officer Cater and Manuel walked toward the hospital, Officer Green followed directly behind Officer Cater and Manuel in his patrol car. I followed behind Officer Green in my patrol car. I advised dispatch that Manuel was in custody. We were able to get Manuel to the hospital without incident.

Upon reaching the hospital Manuel was placed into room 19 of the ER. I began speaking with Manuel's sister and completed the Emergency Mental Commitment paperwork based on the fact that Manuel had tried to jump out of a vehicle at 80 miles per hour. As I was completing the paperwork Manuel's brother in law approached me and again thanked me for being gentle with Manuel as we took him into custody.

I gave the mental commitment paperwork to the hospital staff and I sat with Manuel as the hospital began completing the necessary steps to admit Manuel for mental health treatment. Manuel appeared very restless and would not even sit down as we waited in the ER room. I tried to get Manuel to relax and asked him on several occasions if there was anything that I could get him and if he was ok. Manuel simply stated he was ok and that he did not need anything. At some point Manuel indicated he was thirsty. Either Officer Green or Officer Cater got Manuel a cup of water. I told Manuel I was going to change his hand cuffs so that the cuffs were in front of him so it would be easier for him to drink. I changed the cuffs from the rear to the front without any resistance from Manuel. A short time later a hospital staff member came into the room and stated that she needed to draw some blood from Manuel. Manuel strongly protested having his blood drawn or having hospital staff gather any of his vital signs. A nurse identified as Anastasia Cotton entered the room and stated that they would not be able to offer any type of help to Manuel until they were able to draw a blood sample from him, perform an EKG, and take other vital sign information from Manuel. Manuel clearly was not in his right mind and could not make any rational decision about his well being. When Manuel's family heard this they began pleading with me to do something so that Manuel could be admitted for treatment. The family was afraid to take Manuel home. Manuel's family was extremely scared that if Manuel did not receive immediate treatment for his mental health issues that he would hurt himself or someone else. I talked to the ER staff about Manuel's condition that I had observed and that the family had told me about and asked them to help Manuel however they could. The hospital staff continued to tell me there was nothing that they could do unless Manuel agreed to the blood draw and a check of his vital signs. I knew that Manuel could not be released on his own due to his mental state. Manuel's family did not want him released. The family wanted him to get the

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 4 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:  ARREST  UNFOUNDED  INACTIVE  EXCEPT.  COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT       [ XXX ] INDIVIDUAL       [ ] FOLLOW-UP

medical treatment he needed. Manuel's family came into the room with Manuel and began to plead with Manuel to allow the hospital to help him but their pleas were also unsuccessful. I asked Manuel multiple times to allow the hospital to treat him. However, Manuel continued to be uncooperative with me and all of his family members..

    I was very concerned for Manuel's safety and knew he needed treatment so I called Sergeant Reid Rowe to my location to see if there was anything he could do to help Manuel's family and I find a resolution to the problem. When Sgt. R. Rowe arrived he spoke with Medical staff and was told the same thing. Sgt. R. Rowe also talked to Manuel about complying with the medical staffs requests so he could receive the treatment he needed. Manuel still refused to allow the blood draw so he could be admitted. Sgt. R. Rowe continued to talk to the medical staff while I stayed in the room with Manuel. While sitting with Manuel I asked Manuel if he was thirsty. Manuel stated he wanted a coke so I went to the Emergency Departments refrigerator and got Manuel a coke. I grabbed myself one while I was there. Sgt. R. Rowe watched Manuel while I went to get Manuel a drink. When I returned I opened one of the cokes for Manuel due to the fact he was handcuffed to the front and I thought he might have difficulty opening the can. When I gave the open coke to Manuel he refused to take it due to the fact it was open. It was as if Manuel thought I had tampered with the beverage before giving it to him. I simply gave Manuel the closed coke and he took it and drank it.

    I continued to sit with Manuel while Sgt. R. Rowe and hospital staff attempted to find a way to treat Manuel. After a lengthy discussion, Sgt. R. Rowe, Manuel's father, and one of the nurse's entered the room to talk to Manuel. Manuel's brother stood in the doorway. Manuel's brother and father both were talking to Manuel in Spanish. Manuel's father sat down on the bed to the right side of Manuel. Manuel's father then grabbed Manuel's right arm and held it out and motioned to the nurse to take Manuel's blood. Manuel resisted his father grabbing his arm and pulled it away from his father's grip. Sgt. R. Rowe then asked Manuel's father to leave the room so that we could try to get Manuel calmed back down. The nurses continued to talk to Manuel and Manuel calmed down. Manuel allowed one of the nurses to take his blood pressure. Since Manuel was calm and allowing his blood pressure to be taken, one of the nurses decided to try and draw his blood. When the nurse started to draw the blood, Manuel grabbed the surgical tube connected to the needle. Manuel refused to let go of the tube. I was able to grab the tube and get it out of Manuel's hand. The tube broke in the process. Eventually the hospital stated that if Manuel would put on a hospital gown, he would be admitted and held 48 hours for observation. The hospital was hopeful that in that time span Manuel would change his mind and consent to the blood draw and EKG so he could receive the mental health treatment he needed. Manuel agreed to put on the hospital gown. At that point I removed the cuffs from Manuel so he could be dressed out. Nurse Anna Platero and Nurse Michelle Johnson placed Manuel in a yellow hospital gown on top of the clothes he was already wearing. Johnson and Platero were able to

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 5 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:   ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT      [ XXX ] INDIVIDUAL      [ ] FOLLOW-UP

talk Manuel into taking off his shirt and shoes. However, Manuel refused to remove his shorts. The hospital staff plead with Manuel to take his shorts off but Manuel refused to do so. Platero and Johnson exited the room and Sgt. R. Rowe and myself entered the room to see if we could help Manuel get dressed out as requested by the hospital staff. I thought that Manuel might be shy and might be embarrassed to remove his shorts with females in the room. The curtains were closed for Manuel's privacy. Sgt. R. Rowe spoke with Manuel and tried to explain that he would have to remove his shorts before he could receive treatment. Manuel continued to refuse to take his shorts off and then backed against the wall of the room taking what I would refer to as a defensive position. Sgt. R. Rowe moved toward Manuel continuing to talk to Manuel in a calm tone. As Sgt. R. Rowe got close to Manuel, Manuel grabbed Sgt. R. Rowe's left wrist with his right hand and pushed Sgt. R. Rowe backwards. Manuel was standing with his back to the wall inside of the hospital room so Sgt. R. Rowe placed his arm against Manuel's right shoulder to try and keep Manuel from struggling. I grabbed Manuel's left arm and tried to keep Manuel against the wall and calm him down. Manuel continued to struggle with us and despite our efforts to calm Manuel down, he would not settle down. Due to Manuel's size and strength, he was able to free his left arm from my grip. As I attempted to regain control of Manuel's left arm I looked at Manuel's right hand and observed that Manuel had a can of department issued mace pointed directly at Sgt. R. Rowe's face. Manuel was attempting to get his thumb under the safety cap to discharge the mace at Sgt. R. Rowe's face. I said something to Sgt. R. Rowe to warn him about the mace. I let go of Manuel's left arm and was able to wrestle the can of mace out of Manuel's hand. Once I wrestled the mace can away from Manuel, I threw the can to the other side of the room out of Manuel's reach. Sgt. R. Rowe told Manuel he was under arrest and to settle down. Manuel ignored Sgt. R. Rowe and continued to resist. As I turned back around and faced back towards Manuel, Manuel lunged toward me and wrapped his left hand along the right side of my waist before I could stop him. Manuel grabbed onto my firearm, which I keep in a holster on my right waist. As I looked down I saw that approximately half of my weapon was out of my holster. I grabbed Manuel's hand, which was still on my firearm, with both of my hands and pressed down. I made a twisting motion to the right and was able to break Manuel's grip on my holster and firearm. While this was going on I was yelling at Sgt. R. Rowe "He's going for my gun, He's going for my gun". After breaking Manuel's grip on my firearm and securing it back in my holster, I saw Manuel throw at least two closed fist punches at Sgt. R. Rowe's face. It appeared Manuel's punches made contact with Sgt. R. Rowe's right temple area. I knew from Manuel's family that he was a former Olympic boxer. Based on Manuel's continued non compliance, his continuing to struggle with us, the fact that he had grabbed my can of mace and attempted to take control of my gun, and now his aggressive boxing type stance, I was concerned for my safety, Sgt. R. Rowe's safety, and the safety of the hospital staff and patients. Due to Manuel's behavior, size, strength, and training as a boxer, I believed that Manuel had the ability

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 6 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY: ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT    [ XXX ] INDIVIDUAL    [ ] FOLLOW-UP

to seriously injure me and/or Sgt. R. Rowe with his punches. I saw Sgt. R. Rowe throw a closed fist punch at Manuel that appeared to land on Manuel's right temple area. Sgt. R. Rowe's punch had no affect on Manuel. Manuel continued to struggle despite our repeated commands for him to calm down. As Manuel continued to aggressively engage Sgt. R. Rowe, I threw a closed fist punch at Manuel which landed on the left back portion of his head. This punch had no effect on Manuel. All of this was taking place in a very confined area. I knew we needed to get Manuel restrained for his safety and the safety of everyone around. I took a pair of cuffs from my belt and was going to try and get at least one pair of cuffs on Manuel. Manuel grabbed the cuffs from my hand and threw them across the room. As the struggle continued Sgt. R. Rowe and Manuel ended up on the floor of the small room we were in.. The entire time this was happening Sgt. R. Rowe and I were giving Manuel commands to put his hands behind his back and to quit resisting. Manuel was on his back on the floor in between the hospital bed and the sliding glass door. At this point, the struggle with Manuel had been going on for several minutes. I was getting fatigued and breathing heavily and it appeared Sgt. R. Rowe was in the same condition. I knew the struggle needed to end because the longer it continued the higher the chances of injury to Sgt. R. Rowe, myself, Manuel, and others. I decided to pull out my conducted electrical weapon and drive stun Manuel in an attempt to get Manuel to quit struggling and to place his hands behind his back. Due to how close I was to Manuel I knew there was no need to deploy the barbs of my taser. I removed the cartridge from my taser and powered my taser on. I placed my taser in Manuel's left ribcage area and cycled the weapon. I deployed the weapon approximately five seconds and Manuel gave an indication that he was going to comply. Based on Manuel's indication he was going to comply, I removed the taser from Manuel's side. As soon as I removed the taser, Manuel continued to struggle and resist. Sgt. R. Rowe and I realized that Manuel was not going to stop resisting. Sgt. R. Rowe and I felt that if we had more space that possibly we could restrain Manuel and get control of the situation. Me and Sgt. R. Rowe grabbed Manuel by his hands and pulled Manuel into the hallway just outside of room 19. Manuel was on his back. We continued to tell Manuel to calm down and put his hands behind his back so we could restrain him with cuffs. Manuel continued to be non compliant in placing his hands behind his back. A hospital security guard arrived just after we were in the hallway and assisted me and Sgt. R. Rowe in trying to restrain Manuel. Shortly after we were in the hall, I observed Officer Shannon Meaux arrive on scene to assist us. Shortly after Officer Meaux arrived on scene Officer Cater and Officer Harper arrived on scene. With the help of all of these Officers we were able to successfully get Manuel onto his stomach. At that time I had a handcuff on Manuel's right hand. The rest of the officers were finally able to get Manuel's left hand behind his back. I was able to get Manuel's right hand behind his back over his right shoulder. His right hand was bent at the elbow with his hand pointing towards the ceiling. Instead of continuing to struggle with Manuel, Officer Cater hooked multiple sets of handcuffs together to

| REPORTED BY | ID# | DATE & TIME | APPROVED BY | 7 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:  ARREST  UNFOUNDED  INACTIVE  EXCEPT.  COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

| [ ] SUPPLEMENT | [ XXX ] INDIVIDUAL | [ ] FOLLOW-UP |
|---|---|---|

reach Manuel's hand in the positions that they were in. Manuel's left hand was behind his back near his waist with the cuffs diagonal toward his right shoulder. Manuel's right hand was cuffed in a position that made it look like he was simply touching himself on his right shoulder with his right hand. This is not a conventional handcuffing position but in the interest of ending the struggle this seemed to be the best decision for the safety of the officers and Manuel. After Manuel was cuffed I stood up and made sure that all of the officers were uninjured. Sgt. R. Rowe immediately told us to get Manuel on his back and sit him up. I noticed that Manuel appeared to be breathing heavily. Pursuant to Sgt. R. Rowe's instructions, we got Manuel on his back and tried to sit him up. As soon as we had Manuel on his back, Sgt. R. Rowe said something about Manuel's breathing. Sgt. R. Rowe immediately instructed us to get the cuffs off of Manuel and yelled for medical help from the hospital staff. Medical staff responded and began checking Manuel. A hospital staff member brought a bed and we picked up Manuel and put him on the hospital bed pursuant to instructions from the hospital staff. Manuel's father was at the end of the hallway during this entire time. Manuel's father fell to the floor and began wailing. I went to him and with the help of Manuel's brother we picked the father up and moved him to the waiting room while medical personnel administered aide to Manuel. Manuel's father kept holding his chest so I stayed with him to make sure he was not having any medical issues before returning to the emergency room where the other officers were standing by. As I entered the ER Sgt. R. Rowe advised me that medical staff were still administering care to Manuel and he was unsure of his condition. A short time later I heard Nurse Michelle Johnson tell Sgt. R. Rowe that Manuel had passed away. I then returned to the area of room 19 and stayed there securing the scene and waiting for the ID tech Locke to respond and photograph the scene. I stayed at this position until relieved by other officers.

*[signature]*

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 8 |
|---|---|---|---|---|
| L. Cherry | 445 | | | |

CASE FILED: ___ YES ___ NO
CLEARED BY:  ARREST  UNFOUNDED  INACTIVE  EXCEPT.  COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT  [XX] INDIVIDUAL  [ ] FOLLOW-UP

**COMPLAINANT:** OFFICER L. CHERRY, PAPD
983-8600

**SUSPECT:** MANUEL DELACRUZ, H/M, 08/10/89
3918 11TH STREET, PT. ARTHUR, TEXAS

**DETAILS:**

On 08/01/16 at 4:51 p.m. Officer L. Cherry was dispatched to 2555 Jimmy Johnson Blvd., the South East Texas Medical Center, in reference to speaking with a subject about a mentally ill family member who was refusing to be treated in the ER.. Officer Cherry arrived at the Medical Center and spoke with family members about the mentally ill subject who was identified as Manuel Delacruz and reportedly schizophrenic. After being briefed by family members that Delacruz had attempted to jump from a moving vehicle, had been off his medicine for a while, had not slept in 5 days, and was, according to family members, "highly schizophrenic", Officer L. Cherry had taken Delacruz into custody under an emergency order of detention (mental commitment). Officer Cherry and Officer Cater walked Delacruz into the ER earlier in the day without incident. Officer Cherry had been at the hospital speaking with the staff attempting to have Delacruz admitted for about an hour when he contacted me for assistance. Officer Cherry contacted me around 7:00 pm.

Officer Cherry told me that he had been at the hospital since approximately 5 pm with Delacruz and other family members who were trying to get Delacruz admitted for mental health treatment. The hospital was not going to admit Delacruz due to Delacruz refusing all medical treatment. This included a check of his vitals which the hospital staff stated was necessary before Delacruz could be screened and admitted. We have had similar problems in the past admitting patients and have been told to speak with the charge nurse to attempt to solve problems. I responded to the hospital to assist in getting Delacruz admitted.

Once at the hospital, Officer Cherry told me that Delacruz's family was also there and had told him that Delacruz was a paranoid schizophrenic. The family had brought Delacruz to the hospital to get him mental health treatment. The family reported that the day before, Delacruz had attempted to jump from a moving vehicle at highway speeds.

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 1 |
|---|---|---|---|---|
| R. Rowe | 349 | 08/012/16 @8:24 p.m. | SA | |

CASE FILED ___ YES ___ NO
CLEARED BY:  ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

| [ ] SUPPLEMENT | [XX] INDIVIDUAL | [ ] FOLLOW-UP |
|---|---|---|

His family was able to keep him in the vehicle. The family also reported that Delacruz had not slept in about five days, was refusing to take his medicine, refused to shower, and would defecate on himself. The family was concerned for Delacruz's safety and transported him to the Medical Center for mental health treatment. When family members arrived at the Medical Center ER entrance with Delacruz, Delacruz refused to enter the ER. The family called police to assist them in having Delacruz admitted for mental health treatment. Based on the information from the family, including the fact that Delacruz had attempted to jump from a vehicle moving at highway speed the previous day, for Delacruz's safety, Officer Cherry believed that the situation warranted an emergency mental commitment. Delacruz had walked away from the hospital but Officer Cherry and Officer Cater, along with family members were able to walk Delacruz back to the hospital and into an ER room. When I arrived at the hospital, I talked to Delacruz's brother and a white male who told me he was Delacruz's brother-in-law Delacruz's father was also present but he did not seem to speak English very well. Delacruz's family was concerned for his safety and wanted him to be admitted to the hospital for mental health treatment. The family members understood the hospital wanted to draw blood from Delacruz as a condition of him being admitted. The family asked for our assistance in helping the hospital admit Delacruz.

After talking to the family members, I asked to speak with the charge nurse but was met by two other women, Michelle Johnson, the house supervisor and Nancy Hester who was with the "sprint team". They both explained that Delacruz would not let anyone touch him and without his consent, he could not be admitted. It was explained to Johnson that we had no other option but the hospital and if they were not able to admit him he would be turned loose. Me, Delacruz's father, and Johnson, then went inside room 19 to speak with Delacruz. Delacruz's brother was standing in the doorway talking to Manuel in Spanish. Officer Cherry was still in the room with Delacruz when the three of us entered.

Delacruz was in room 19 with his hands handcuffed in front of him. He accused Johnson of wanting to poison, kill and rape him. Despite these comments, Delacruz seemed calm but he did not want anyone to touch him, including his family. Delacruz kept mumbling something. It was difficult to understand the mumbling and he did not seem to be talking to anyone specifically. It seemed to me that Delacruz was obviously suffering from some type of mental disorder and needed treatment for his own safety and well being. Delacruz's father sat on bed to the right of Delacruz. Delacruz's father grabbed Delacruz's right arm and held it out and motioned for one of the nurses to draw the blood. Delacruz

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 2 |
|---|---|---|---|---|
| R. Rowe | 349 | 08/012/16 @8:24 p.m. | SA | |

CASE FILED ___ YES ___ NO
CLEARED BY:   ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT    [XX] INDIVIDUAL    [ ] FOLLOW-UP

resisted his father holding out his right arm and was able to free his right arm from his father's grip. It seemed to me that Delacruz's father wanted us to hold Manuel so that the hospital staff could draw his blood. Delacruz's father was agitating Delacruz and making the situation worse so I asked the father to leave the room.

At this point, Delacruz's father stepped just outside the door of the room and another nurse entered the room. The nurses talked with Delacuz for a period of time and he remained calm., Delacruz then let one of the nurses take his blood pressure. Johnson took Delacruz's blood pressure. Delacruz was calm while Johnson took his blood pressure. Since Delacruz was calm and the family wanted Delacruz admitted, Johnson attempted to draw blood from Delacruz. When Johnson got ready to set the needle, Delacruz grabbed the surgical tube connected to the needle. A minor struggle began and I grabbed Delacruz's hand to keep him from gaining control of the needle. Officer Cherry grabbed the needle from Johnson and pulled it away from Delacruz who refused to let go, despite being ordered to do so. Officer Cherry was able to gain control only by stretching the tubing until it broke. After a lengthy discussion, the hospital staff then decided that they would put a "sitter" on Delacruz and hope that he would eventually allow them to draw his blood. Officer Cherry got Delacruz a drink and removed the cuffs from Delacruz so that it would be easier for him to drink. The hospital staff asked that we stay for a period of time to make sure Delacruz would remain calm after his handcuffs were off.

Johnson was able to get Delacruz to take off his shirt and shoes and put on a yellow gown. Johnson also asked Delacruz to remove his shorts. Delacruz refused to take off his shorts. Officer Cherry and I thought Delacruz may have refused to remove his shorts out of embarrassment so we offered to hold up a large blanket for him to stand behind and remove his shorts. Johnson actually held up a blanket but Delacruz still refused to remove his shorts. Officer Cherry and I decided that maybe if the two female nurses stepped out that maybe Delacruz would then take off his shorts and lay down in bed. The two nurses left the room and closed the curtain for privacy so that Delacruz could remove his shorts.

Delacruz was wearing baggy shorts that looked over sized. I thought we could help Delacruz with his shorts and then he could be admitted as his family wanted. Delacruz then backed against the wall in a defensive position and grabbed me by the left wrist with his right hand and tried to push me back. Officer Cherry tried to hold Delacruz against the wall but Delacruz then grabbed Cherry's wrist with his left hand. We were trying to calm Delacruz down. Delacruz slung his right elbow towards me and hit me in the head.

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 3 |
|---|---|---|---|---|
| R. Rowe | 349 | 08/012/16 @8:24 p.m. | SA | |

CASE FILED ___ YES ___ NO
CLEARED BY:  ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED:

SUPPLEMENT REPORT
PORT ARTHUR POLICE DEPARTMENT

| OFFENSE: TAKING AN OFFICER'S WEAPON | CASE #: 46506-16 |
|---|---|

[ ] SUPPLEMENT   [XX] INDIVIDUAL   [ ] FOLLOW-UP

We continued to ask Delacruz to calm down and spoke to him in a normal tone. We did not yell or scream at him because we did not think it would help. Officer Cherry also kept talking to Delacruz trying to calm him down. This went on for several minutes.

Suddenly, I heard Officer Cherry say "watch it he got your mace". I looked up and saw that Delacruz was holding a mace can and pointing it my direction. Almost at the same time Cherry used both of his hands and was able to grab the mace can from Delacruz's grip. Officer Cherry tossed the mace can off to the side. At this point I stated to Delacruz something to the effect of "your under arrest stop it, relax". Delacruz did not comply with either my or Officer Cherry's commands. We continued struggling with Delacruz and were now trying to get Delacruz's hands behind his back so that we could place him in hand cuffs. Seconds later Officer Cherry said "watch it! Dammit he is trying to get my gun". I looked and saw Delacruz's left hand on Officer Cherry's right side where he carries his pistol. I couldn't see his gun because Officer Cherry's body was blocking the view but it did look like Delacruz was attempting to pull Officer Cherry's gun from his holster. Officer Cherry put both hands on his gun and pulled his whole body away from Delacruz. I stepped back at the same time to draw my weapon in case Delacruz had been able to remove Officer Cherry's gun from his holster. When I realized Officer Cherry had retained possession of his sidearm I approached Delacruz who still had his back against the wall with both hands up. Both his fists were closed and he was in a boxing or fighting stance. I approached Delacruz trying to calm him down so that Delacruz could be placed into custody. Delacruz hit me twice on the left side of the head with a closed fist. I saw both punches coming and was able to dodge both of them so that they didn't hit me directly in the face.

Delacruz was non compliant, had tried to spray me with mace, had tried to take Officer Cherry's gun, and now had hit me twice in the side of my face. Delacruz was a large person and had been an Olympic boxer. I was in fear for the safety of Delacruz, my safety, the safety of Officer Cherry, and for the safety of everyone in the immediate area including patients and hospital staff.

In an attempt to defend myself I struck Delacruz one time with a closed fist somewhere in the face or side of the head. The blow had no effect on Delacruz. Officer Cherry also swung at Delacruz but I do not know if Officer Cherry connected with Delacruz. From the time Delacruz was able to remove the pepper spray and the time that blows were exchanged was a matter of seconds.

| REPORTED BY | ID # | DATE & TIME | APPROVED BY | 4 |
|---|---|---|---|---|
| R. Rowe | 349 | 08/012/16 @8:24 p.m. | SA | |

CASE FILED ___ YES ___ NO
CLEARED BY:   ARREST   UNFOUNDED   INACTIVE   EXCEPT.   COMP W/N PROS

CHARGES ACCEPTED: