**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **OLGA DELACRUZ AND MARCO** | § | |
| **DELACRUZ, INDIVIDUALLY, AND** | § | |
| **AS REPRESENTATIVES OF THE** | § | |
| **ESTATE OF MANUEL DELACRUZ** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. 1:18-CV-11** |
| **v.** | § | |
| | § | |
| **CITY OF PORT ARTHUR, PORT** | § | |
| **ARTHUR POLICE DEPARTMENT,** | § | |
| **OFFICER LANE CHERRY,** | § | |
| **IN HIS INDIVIDUAL AND** | § | |
| **OFFICIAL CAPACITY,** | § | |
| **UNKNOWN OFFICERS,** | § | |
| **THE MEDICAL CENTER OF** | § | |
| **SOUTHEAST TEXAS, L.P. D/B/A** | § | |
| **THE MEDICAL CENTER OF** | § | |
| **SOUTHEAST TEXAS L.P.,** | § | |
| | § | |
| *Defendants*. | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS LANE CHERRY, TERRY CATER,
REID ROWE, SHANNON MEAUX, AND SHELBY HARPER'S
MOTION FOR SUMMARY JUDGEMENT
AND OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE**

---

Defendants Lane Cherry ("*Cherry*"), Terry Cater ("*Cater*"), Shannon Meaux ("*Meaux*"),

Shelby Harper ("*Harper*"), and Reid Rowe ("*Rowe*") (collectively, "*Defendants*" or the

"*officers*") have filed a motion for summary judgment in which they argue that there is no issue

of material fact as to Plaintiffs' Fourth Amendment excessive-force claims against the officers,

nor is there a fact issue as to the applicability of qualified immunity. The admissible summary

judgment evidence shows that Defendants are mistaken, and that Defendants cannot carry their

summary judgment burden as to these issues. Therefore, the motion should be denied.

## SUMMARY OF THE ARGUMENT

Defendants' motion for summary judgment should be denied for the following reasons:

*First*, Defendants' motion for summary judgment relies largely upon inadmissible hearsay and unauthenticated documents that cannot properly form the basis of summary judgment. Moreover, Defendants' motion is deficient with respect to this District's Local Rules and this Court's local procedures and should be struck.

*Second*, the summary judgment evidence, and the inferences to be drawn therefrom, show a genuine issue of material fact as to Plaintiffs' excessive-force claims pursuant to Section 1983, Title 42, United States Code, and the Fourth Amendment of the United States Constitution. Plaintiffs have enclosed and cited competent summary judgment evidence as to their injury which resulted directly and only from the Defendants' unreasonable use of excessive force—the death of their loved one Manuel Delacruz. Defendants have failed to carry their burden to show no genuine issue of material fact as to the elements of Plaintiffs' claims. Therefore, summary judgment should be denied.

*Finally*, the summary judgment evidence shows that Defendants' conduct was objectively unreasonable leading up to and during their altercation with Manuel, a schizophrenic hospital patient, and any reasonable officer would have known that the forcible removal of Manuel's clothing was unlawful under established law at the time of fight that claimed Manuel's life.

Therefore, summary judgment should be denied.

**TABLE OF CONTENTS**

SUMMARY OF THE ARGUMENT .................................................................................2

TABLE OF CONTENTS .........................................................................................3

SUMMARY JUDGMENT EVIDENCE.........................................................................4

NATURE & STAGE OF PROCEEDINGS ...................................................................5

OBJECTIONS TO OVERLENGTH AND NON-COMPLIANT MOTION...................................6

OBJECTIONS TO DEFENDANTS' INADMISSIBLE SUMMARY JUDGMENT
EVIDENCE.....................................................................................................7

PLAINTIFFS' RESPONSE TO STATEMENT OF ISSUES.................................................9

PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS .......................................................................................................10

SUMMARY JUDGMENT STANDARD OF REVIEW .............................................20

ARGUMENTS & AUTHORITIES...........................................................................21

I.      The Officer Defendants' Use of Force Was Unreasonable and Excessive
        Under the Circumstances. ...............................................................21

II.     The Officer Defendants Are Not Entitled to Qualified Immunity....................26

CONCLUSION..................................................................................................28

## SUMMARY JUDGMENT EVIDENCE

The following summary judgment evidence shows that there are genuine issues of material fact that preclude the grant of summary judgment:

| | |
|---|---|
| **Exhibit 1** | Declaration of Jeffrey Noble, attaching Expert Report as Exhibit A |
| **Exhibit 2** | Deposition transcript excerpts Lane Cherry ("***Cherry Depo.***") |
| **Exhibit 3** | Deposition transcript excerpts Terry Cater ("***Cater Depo.***") |
| **Exhibit 4** | Deposition transcript excerpts Ana Buller ("***Buller Depo.***") |
| **Exhibit 5** | Deposition transcript excerpts Chuck Burch ("***Burch Depo.***") |
| **Exhibit 6** | Deposition transcript excerpts Olga Delacruz ("***Olga Delacruz Depo.***") |
| **Exhibit 7** | Deposition transcript excerpts Marco Delacruz Sr. ("***Marco Delacruz Sr. Depo.***") |
| **Exhibit 8** | Deposition transcript excerpts Reid Rowe ("***Rowe Depo.***") |
| **Exhibit 9** | Deposition transcript excerpts Marco Delacruz Jr. ("***Marco Delacruz Jr. Depo.***") |
| **Exhibit 10** | Deposition transcript excerpts Shannon Meaux ("***Meaux Depo.***") |
| **Exhibit 11** | Deposition transcript excerpts Ruth Delacruz ("***Ruth Delacruz Depo.***") |

## NATURE & STAGE OF PROCEEDINGS

On June 28, 2018, Plaintiffs filed their Second Amended Complaint against, *inter alia*, Cherry, joining Rowe, Carter, Meaux, and Harper alleging excessive force claims pursuant to the Fourth Amendment and Section 1983. (*See* ECF Doc. 32.)

On March 14, 2019, this Court dismissed Plaintiffs' claims pursuant to Section 1983 against the City of Port Arthur, and partially dismissed Plaintiffs' claims against the Officer Defendants for failure to train and supervise. (ECF Docs. 63, 64.) The Court expressly deferred ruling on Plaintiffs' excessive-force claims, pending discovery and reconsideration on summary judgment. (*Id.*) In the meantime, the parties have taken fact discovery, including the depositions of fact witnesses to the incident that claimed Manuel Delacruz's life, and the circumstances surrounding that fateful incident.

The motion now pending before the Court is a motion for summary judgment brought by these officer Defendants. Prior to this stage, Defendants have attempted on four occasions to seek dismissal of Plaintiffs' complaints against them. (ECF Docs. 16, 27, 37, and 41.) The Officer Defendants have once again raised many of the same arguments in their prior briefing on. (*See generally* ECF Doc. 41.) The summary judgment evidence shows that these arguments lack merit and that genuine issues of material fact preclude summary judgment. Therefore, for the reasons discussed within, Defendants' motion should be denied.

## OBJECTIONS TO OVERLENGTH
## AND NON-COMPLIANT MOTION

As an initial matter, Plaintiffs object to Defendants' attempts to circumvent the thirty-page limit imposed by Local Rules CV-7(a)(1), CV-10(a), and this Court's Standing Order MC-56, to the extent that Defendants' motion is largely single-spaced, incorporates lengthy footnotes in a font smaller than 12-point type, and fails to contain the items required by the Court's standing orders in a motion for summary judgment. (*E.g.*, ECF Doc. 66 at 3-16 & nn. 2-6, 28 n.8, 29 n.9.)

Plaintiffs further object to Defendants' recitation of their purportedly material facts in a manner that is not "enumerated in a separately numbered sentence with reference to the evidentiary record." Standing Order MC-56. Specifically, Defendants make numerous broad and unsupported factual statements in each numbered paragraph of its *Undisputed Material Facts* section, followed by an indiscriminate string citation to the exhibits which purportedly support their position. Defendant's improper practice has exponentially increased the difficulty of, and inefficiency in, responding to the motion in accordance with this Court's standing order MC-56 with citations to the factual record.

Although Plaintiffs believe they have adequately shown a genuine issue of material fact that precludes summary judgment, in the event that the Court does not deny the motion on the merits, Plaintiffs pray that the Court strike Defendants' motion as non-compliant with the Local Rules of this District and the Standing Orders of this Court.

## OBJECTIONS TO DEFENDANTS' INADMISSIBLE
## SUMMARY JUDGMENT EVIDENCE

"Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial." *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 373 (5th Cir. 2007). Inadmissible hearsay may not be considered in support of a motion for summary judgment. *Id.*; *accord Broadway v. Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976); *Macuba v. DeBoer*, 193 F.3d 1316, 1323-1324 (11th Cir. 1999).

Defendants largely rely upon unauthenticated and inadmissible hearsay statements that cannot support summary judgment. Therefore, Plaintiffs object to certain of Defendants' summary judgment evidence as unauthenticated or inadmissible hearsay for which no exception applies:

| Defendants' Exhibit | Plaintiffs' Objection |
|---|---|
| "A" Dispatch Recording | Plaintiff's object to the out-of-court statements made in this audio recording to the extent they are being offered for the truth of the matters asserted. Such statements are inadmissible hearsay. Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication. Fed. R. Evid. 901. |
| "B" Cherry's Dash Cam Video | Plaintiff's object to the out-of-court statements made in this video recording to the extent they are being offered for the truth of the matters asserted. Such statements are inadmissible hearsay. Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication. Fed. R. Evid. 901. |
| "C" Cherry's Audio Recording | Plaintiff's object to the out-of-court statements made in this audio recording to the extent they are being offered for the truth of the matters asserted. Such statements are inadmissible hearsay. Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication. Fed. R. Evid. 901. |
| "D" Green's Dash Cam Video | Plaintiff's object to the out-of-court statements made in this video recording to the extent they are being offered for the truth of the matters asserted. Such statements are inadmissible hearsay. Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication. Fed. R. Evid. 901. |

| Defendants' Exhibit | Plaintiffs' Objection |
|---|---|
| "E"<br>Cater's Dash Cam Video | Plaintiff's object to the out-of-court statements made in this video recording to the extent they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication.  Fed. R. Evid. 901. |
| "F"<br>Exhibits to Cherry's Deposition | Plaintiff's object to the out-of-court statements made in the Exhibits to Lane Cherry's deposition as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. |
| "H"<br>Exhibits to Rowe's Deposition | Plaintiff's object to the out-of-court statements made in the Exhibits to Reid Rowe's deposition as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. |
| "J"<br>Harper's Police Report | Plaintiff's object to the out-of-court statements made in this police report as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. Plaintiffs further object to this report as lacking authentication.  Fed. R. Evid. 901. |
| "K"<br>Autopsy Report | Plaintiff's object to the out-of-court statements made in this autopsy report as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. Plaintiffs further object to this report as lacking authentication.  Fed. R. Evid. 901. |
| "L"<br>TCOLE Training Printouts | Plaintiff's object to the out-of-court statements made in these print-outs as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. Plaintiffs further object to these print-outs as lacking authentication.  Fed. R. Evid. 901. |
| "M"<br>Meaux's In-car Video | Plaintiff's object to the out-of-court statements made in this video recording to the extent they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. Plaintiffs further object to this recording as lacking authentication.  Fed. R. Evid. 901. |
| "O"<br>Exhibits to Buller's Deposition | Plaintiff's object to the out-of-court statements made in the Exhibits to Ruth Buller's deposition as they are being offered for the truth of the matters asserted.  Such statements are inadmissible hearsay.  Fed. R. Evid. 801. |
| "P"<br>Officer Police Reports of Incident | Plaintiff's object to the out-of-court statements made in these police report as they are being offered for the truth of the matters asserted, as well as to the statements ascribed to others purportedly to the officers making the reports.  Such statements are inadmissible hearsay or hearsay within hearsay.  Fed. R. Evid. 801, 805. Plaintiffs further object to this report as lacking authentication.  Fed. R. Evid. 901. |

| Defendants' Exhibit | Plaintiffs' Objection |
|---|---|
| "V"<br>Memoranda from District Attorney's Office | Plaintiff's object to the out-of-court statements made in these memoranda as they are being offered for the truth of the matters asserted. Such statements are inadmissible hearsay. Fed. R. Evid. 801. Plaintiffs further object to this report as lacking authentication. Fed. R. Evid. 901. Plaintiffs further object to these memoranda as lacking authentication. Fed. R. Evid. 901. |
| "W"<br>Letter from Robert C. Bux, M.D., to Defendants' Counsel | Plaintiffs object to this report as lacking authentication. Fed. R. Evid. 901; *see Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) ("[Expert's] report was introduced into the record without any supporting affidavit verifying its authenticity and is therefore inadmissible and cannot be considered for purposes of summary judgment.") |
| "X"<br>Report of Albert Rodriguez | Plaintiffs object to this report as lacking authentication. Fed. R. Evid. 901; *see also Scott*, 346 F.3d at 759. |

Therefore, Plaintiff respectfully prays that this court sustain Plaintiff's objections to Defendants' summary judgment evidence.

### PLAINTIFFS' RESPONSE
### TO STATEMENT OF ISSUES

Pursuant to this District's Local Rule CV-7(a) and CV-56(b) and this Court's Standing Order MC-56(a)(6), Plaintiffs provide the following response to Defendants' "Statement of Issues to be Ruled Upon." (*See* ECF Doc. 66 at 16.)

Plaintiffs agree that the only issues presented in Defendants' motion for summary judgment are whether Rowe, Cherry, Cater, Meaux, and Harper used excessive force in this case as understood under the Fourth Amendment, and whether they are entitled to qualified immunity for their actions. Contrary to Defendants' assertions, however, the summary evidence shows that the officers did, in fact, use excessive force against the decedent Manuel Delacruz, which was objectively unreasonable under the circumstances. Therefore, the officers are not entitled to qualified immunity, nor summary judgment.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED FACTS**

Pursuant to this District's Local Rule CV-7(a) and CV-56(b) and this Court's Standing Order MC-56(a)(4), Plaintiffs provide the following response to Defendants' purportedly "Undisputed Material Facts," (*see* ECF Doc. 66 at 3-16.):

11. Plaintiffs object to the unauthenticated and hearsay testimony of Mr. Burch contained within this paragraph not discussed during his deposition. Undisputed that decedent Manuel Delacruz suffered from schizophrenia, had attempted to open the door of a truck while it was in motion, and had trouble sleeping.

12. Undisputed that Officer Lane Cherry was first on scene and met with the Delacruz family. *However*, the characterization that Cherry had "extensive prior experience dealing with persons with mental health disorders and their emergency detentions" is disputed because he testified that "the situation involving Manuel Delacruz was the very first time [that he] had to remain longer than that 15-, 20-minute window" during a mental health detention. (Cherry Depo. at 24.) Disputed that Manuel Delacruz "defecate[d] on himself" as Cherry testified that he did not recall being told that. (*Id.* at 26.)

13. Disputed to the extent that Cherry's subjective motivations and intent are inherently questions of fact. Otherwise, the sequence of events described is generally undisputed and/or not material.

14. Disputed to the extent that Cherry's subjective motivations and intent are inherently questions of fact. Otherwise, the sequence of events described is generally undisputed and/or not material. Nevertheless, Plaintiffs further note that Cherry described Manuel Delacruz as "not threatening" throughout his entire interaction with him. (*Id.* at 29-30.)

15.     Plaintiffs object to the unauthenticated and hearsay testimony of Mr. Burch contained within this paragraph not discussed during his deposition. Otherwise, the sequence of events described is generally undisputed and/or not material.

16.     Undisputed. Plaintiffs further note that Cater and Cherry were satisfied that Manuel Delacruz was not armed and not under arrest at this time.  (Cater Depo. at 39-40.)

17.     Disputed that Cater believed "it was about 50/50 whether Manuel would be admitted peacefully, or resist, at the hospital."  Rather, Cater testified that he would choose "somewhere in the middle" if "he had to choose between [Manuel] being admitted peacefully or resisting at the time he was in the hospital?"  (*Id.* at 38.)  Defendants' paraphrasing of Cater's testimony improperly implies an all-or-nothing proposition, when his testimony reasonably means that on balance Delacruz's conduct fell short of resistance, but further than complete docility. Otherwise, the sequence of events described is generally undisputed and/or not material.

18.     Plaintiffs object to the unauthenticated and hearsay evidence within this paragraph. Otherwise, the sequence of events described is generally undisputed and/or not material.

19.     Plaintiffs object to the unauthenticated and hearsay evidence within this paragraph. Disputed that Cherry testified that he was requested to stay as he testified during his deposition, he could not recall whether the hospital requested that he stay.  (Cherry Depo. at 36.) Plaintiffs further note that Cherry described Manuel Delacruz as "not threatening" throughout his entire interaction with him.  (*Id.* at 29-30.)  Moreover, the charge nurse at the emergency room, Ana Buller, testified that she never saw Manuel Delacruz ever "combative, angry, [or] disrespectful" until the struggle that led to his death.  (Buller Depo. at 29.)

20.     Plaintiffs object to the unauthenticated and hearsay evidence within this paragraph. Disputed that Cherry testified that he was requested to stay as he testified during his deposition he

could not recall whether the hospital requested that he stay. (Cherry Depo. at 36.) Disputed that Manuel Delacruz "defecate[d] on himself" as Cherry testified that he did not recall being told that. (*Id.* at 26.) Otherwise, undisputed and not material.

21. Disputed to the extent that Cherry's subjective motivations and intent are inherently questions of fact. Otherwise, the sequence of events described is generally undisputed and/or not material.

22. Undisputed that Cherry completed, signed, and submitted the mental health warrant and that the form states that information was obtained from Ruth Delacruz.

23. Disputed to the extent that Cherry's subjective motivations and intent are inherently questions of fact. Defendants' characterization of Manuel Delacruz as a "danger" to the people around him is also disputed as it is contrary to Cherry's testimony that he was not threatening, (Cherry Depo. at 29-30), the charge nurse's testimony to the same, (Buller Depo. at 29), as well as the testimony of Manuel's friends and family members who testified that he was non-violent and well-behaved, (Burch Depo. at 33; Olga Delacruz Depo. at 22; Marcos Delacruz Sr. Depo. at 21.).

24. Plaintiffs object to the unauthenticated and hearsay evidence within this paragraph that the "family was scared of him," which Rowe attributes to an unnamed white male. Defendants' characterization of Manuel Delacruz as a "danger" to others around him is disputed for the same reasons discussed in paragraph 24. Defendants' characterization that Rowe "confirmed" "reported problems" with family members is not supported by the summary judgment evidence.

25. Disputed to the extent that the phrasing of Defendants' assertion implies that Manuel Delacruz committed a crime. Otherwise, undisputed.

26.     Disputed to the extent that Rowe's subjective motivations and intent are inherently questions of fact.  Further disputed that officers "do not like to just drop off a person with a mental issue in an emergency room without providing some security."  Cherry testified that the majority of drop-offs last no longer than 15 to 20 minutes in length. (Cherry Depo. 21-23.)  Defendants' characterization that the "nurses do not like them to do that" is also disputed as the charge nurse on duty testified that if the patient is not under arrest, then the officers "didn't have to be there. I don't believe I've ever asked them -- I never asked them to stay there. They just do stay there." (Buller Depo. at 68; *see also* Cater Depo. at 38 (testifying that Manuel was not hostile or threatening others).)

27.     Undisputed that Rowe testified as to his training.  Plaintiffs further note that Cherry had not undergone any additional crisis intervention training until after the incident.  (Cherry Depo. at 144.)  Otherwise, not material.

28.     Plaintiffs object to the hearsay testimony of Michelle Johnson and Nancy Hester in this paragraph.  Otherwise, the sequence of events described is generally undisputed and/or not material.

29.     Plaintiffs object to the unauthenticated and hearsay evidence within this paragraph Disputed to the extent that Defendants' characterization of Manuel Delacruz is contrary to Cherry's testimony that he was not threatening, (Cherry Depo. at 29-30), the charge nurse's testimony to the same, (Buller Depo. at 29), as well as the testimony of Manuel's friends and family members who testified that he was non-violent and well-behaved, (Burch Depo. at 33; Olga Delacruz Depo. at 22; Marcos Delacruz Sr. Depo. at 21.).   Undisputed that Manuel Delacruz occasionally suffered from the symptoms of his schizophrenia.

30.     Disputed to the extent that Rowe's testimony conflicts with that of Ana Buller who testified that even patients subject to an emergency detention order (like Manuel) retained the right to refuse treatment—an assessment with which the primary nurse on duty agreed.  (Buller Depo. at 17-21, 23-24.)

31.     Undisputed but not material.  Nevertheless, Plaintiffs further note that during this time, the charge nurse noted that Manuel Delacruz was never combative, angry, or disrespectful. (Buller Depo. at 27-29.)

32.     Plaintiffs object that this paragraph is comprised of speculation and legal argument, not statements of undisputed facts.  Disputed to the extent that Rowe's subjective motivations and intent are inherently questions of fact.  Undisputed that Rowe and Cherry were positioned outside of Manuel Delacruz's room and that the process of checking in to the hospital took several hours. Undisputed that Manuel had rights as a patient and medical care could not be forced upon him. Undisputed that the medical staff knew about these rights.  Defendants' characterizations with respect to the charge nurse Ana Buller's law enforcement training or that she is not a psychiatric nurse is not material.  Undisputed that Manuel Delacruz was not thinking rationally. Undisputed as to the length of time that the officers were approximately on the premises.  Disputed that the officers "are going to have to leave" to the extent that an emergency detention could last as long as 72 hours and to the extent that Defendants argue that the officers were required to remain on the premises.  (Buller Depo. at 33, 68.)  Otherwise, not material.

33.     Disputed to the extent that the charge nurse on duty testified that if the patient is not under arrest, then the officers "didn't have to be there. I don't believe I've ever asked them -- I never asked them to stay there. They just do stay there."  (Buller Depo. at 68; *see also* Cater Depo.

at 38 (testifying that Manuel was not hostile or threatening others).)  Otherwise, undisputed and/or not material.

34.    Disputed that the officers acted "professionally" or handled the situation with Manuel Delacruz appropriately because the officers used excessive and unreasonable force as discussed below.  Undisputed to the extent that Defendants summarize Burch, Ruth Delacruz, and Marco Delacruz's limited contact with Cherry and Rowe prior to the altercation, but not material. Otherwise, the sequence of events described is generally undisputed and/or not material.

35.    The sequence of events described is generally undisputed and/or not material.

36.    Plaintiffs are unable to dispute this paragraph to the extent that Cherry and Rowe were the only living witnesses to the events that transpired within the room when the altercation began.  Plaintiffs further note prior to Cherry and Rowe removing everyone but Manuel Delacruz from the room, Rowe made a joke containing sexual innuendo in the presence of the charge nurse and Manuel to the effect of "What guy wouldn't want two pretty ladies taking his clothes off?" (Buller Depo. at 54.)  Cherry and Rowe knew prior to this point in time that Manuel had a fear of being raped by the police, which was exacerbated by his schizophrenia.  (Cherry Depo. at 27; Rowe Depo. at 47; *see also* Buller Depo. at 56 ("I understand schizophrenic patients, they -- especially when they're in their paranoid state, you know, there's little triggers can make things seem really big in their mind. But that's a legitimate fear for any person that's schizophrenic.").) Ana Buller, the charge nurse, testified that—although she did not realize the significance at the time—as soon as Rowe made that joke, that Manuel's demeanor changed to a look of terror and increased anxiety.  (Buller Depo. at 58.)  She compared Manuel's demeanor to that of a "scared 5-year-old."  (*Id.*)  A few minutes later, the officers asked the nurses to leave the room, which they did.  (*Id.* at 59.)  The altercation followed mere minutes later.  (*Id.* at 60.)

37.     Disputed to the extent that Cherry and Rowe's subjective motivations and intent are inherently questions of fact.

38.     Plaintiffs object to the extent that Defendants are relying upon unauthenticated and inadmissible hearsay. Otherwise, Plaintiffs are unable to dispute this paragraph to the extent that Cherry and Rowe were the only living witnesses to the events that transpired within the room during the altercation.

39.     Plaintiffs object to the extent that Defendants are relying upon unauthenticated and inadmissible hearsay. Plaintiffs are unable to dispute this paragraph to the extent that Cherry and Rowe were the only living witnesses to the events that transpired within the room during the altercation. Undisputed that additional officers and a security guard arrived to assist Cherry and Rowe. Disputed that Cherry and Rowe "slid or forced" Manuel Delacruz into the fall on his back because an Chuck Burch testified that they "came out on his back with them two on top of him," "slammed [him] hard on the floor," and "just took him straight down," landing on his back. (Burch Depo. at 18-19.) Marco Delacruz Sr. testified that the officers were "strangling" and "killing" Manuel. (Marco Delacruz Sr. Depo. at 17.) Likewise, Marcos Delacruz, Jr. testified that he saw Rowe performing a chokehold on Manuel. (Marco Delacruz Jr. Depo. at 12-13.) Defendants recognize factual disputes on several of these issues in their footnote 4 but attempt to improperly discount the testimony of witnesses that do not comport with their factual theory. Disputed that Burch was 30 feet away from Manuel. (*See* Burch Depo. at 41 (testifying he was standing 15-20 feet away).) Defendants allegation in footnote 5 that Burch "did not actually see how Manuel interacted with the officers for much of the time they were in the hallway" is not supported by the summary judgment evidence. Defendants' remaining allegations are not material.

40.     Disputed that Rowe was not applying a chokehold.  Marco Delacruz Jr. testified that he knew the difference between a headlock and chokehold and that he witnesses Rowe performing the latter.  (Marco Delacruz Jr. Depo. at 12-13.)  Marco Delacruz Sr. also testified that he saw the officers strangling Manuel Delacruz.  (Marco Delacruz Sr. Depo. at 17.)  Plaintiffs further note that the hospital's medical staff reported incontinence of the bowel and bladder well into the altercation.  (Buller Depo. at 43.)  Ana Buller, the charge nurse, testified that an incontinence episode is a "very strong sign that something's not right" such as a lack of oxygen to the brain or heart.  (Buller Depo. at 49-50.)  Meaux also noted that heavier individuals like Manuel Delacruz are more susceptible to positional asphyxiation because of the greater pressure on them when on their stomachs.  (Meaux Depo. at 27-28.)   Plaintiffs further note that Cater testified that chokeholds that cut off a person's ability to breath are not an acceptable police practice. (Cater Depo. at 30-31.)  Disputed that Manuel Delacruz was having no trouble breathing.  Meaux testified that he did not hear Manuel make any noises and nor could he hear him breathing during the struggle.  (Meaux Depo. at 35.)  Cater testified the same, and that immediately upon turning Manuel over onto his back that he appeared flaccid and unresponsive.  (Cater Depo. at 55.)

41.     Undisputed.

42.     Plaintiffs object that this paragraph is comprised of speculation and legal argument, not statements of undisputed facts.  Disputed to the extent that Rowe's subjective motivations and intent are inherently questions of fact.  Disputed to the extent Meaux testified that heavier individuals have heightened risk of positional asphyxiation when left restrained on their stomachs. (Meaux Depo. at 27-28.)

43.     Plaintiffs object to the extent that Defendants are relying upon unauthenticated and inadmissible hearsay.  Otherwise, the sequence of events described is generally undisputed and/or

not material.  Plaintiffs dispute, however, Defendants' characterization that Manuel Delacruz was "still combative" with the officers given that the altercation erupted because of Rowe and Cherry's unlawful and unreasonable use of force.  Hospital staff noted that that he was non-combative at all times prior to their attempt to forcibly remove his shorts.  (Buller Depo. at 29, 35, 72.)

44.      Plaintiffs object to the extent that Defendants are relying upon unauthenticated and inadmissible hearsay.  Disputed to the extent that Cater and Meaux both testified that they did not hear Manuel Delacruz breathing during the time in which they were attempting to handcuff Manuel.  (Meaux Depo. at 35; Cater Depo. at 55.)

45.      Plaintiffs object that this paragraph is comprised of legal argument, not statements of undisputed facts.  Plaintiffs dispute Defendants' characterization that Manuel Delacruz was "threat" given that the altercation erupted because of Rowe and Cherry's unlawful and unreasonable use of force.  Hospital staff noted that that he was non-combative at all times prior to their attempt to forcibly remove his shorts.  (Buller Depo. at 29, 35, 72.)

46.      Disputed that Rowe did not place Manuel in a chokehold.  (Marco Delacruz Jr. Depo. at 12-13; Marco Delacruz Sr. Depo. at 17.)

47.      Undisputed as to the time estimates provided by the fact witnesses in this case as to the length of time that the altercation lasted.   Plaintiffs dispute, however, Defendants' characterization that Manuel Delacruz was "resisting arrest and fighting" with the officers given that the altercation erupted because of Rowe and Cherry's unlawful and unreasonable use of  force. Hospital staff noted that that he was non-combative at all times prior to their attempt to forcibly remove his shorts.  (Buller Depo. at 29, 35, 72.)

48.      Disputed to the extent that Rowe's subjective motivations and intent are inherently questions of fact.  Rowe's accounting of his actions is further disputed in that the charge nurse

testified that Rowe was arrogant, unprofessional, impatient and in a hurry to leave. (Buller Depo. at 52-53, 54.) Rowe's account is further contradicted by the fact that Chuck Burch volunteered to recruit help from Manuel Delacruz's brother and father, to which Rowe responded, "That's what we get paid for," while putting on his gloves soon before Manuel's death. (Burch Depo. at 15.)

49. Undisputed that Rowe testified regarding CIT training, but not material. Disputed that Rowe tried to calm Manuel Delacruz down as he forcibly attempted to remove Manuel's shorts with Cherry, despite knowing that Manuel had an irrational fear of being raped by police officers. (Cherry Depo. at 75; *see also* Buller Depo. at 52-53, 54; Burch Depo. at 15.)

50. Undisputed that Rowe and Cherry testified regarding policies and training, but such testimony is not material. Moreover, Plaintiffs object that this paragraph is comprised, in part, of legal argument, not statements of undisputed facts. Disputed to the extent Defendants imply that removing Manuel Delacruz's shorts were a necessary "last step." (Buller Depo. at 33-34 (noting that no one can force a psychiatric patient to do anything absent a court order taking away his rights); Cater Depo. 41-42 (noting that persons have the right to remain clothed); Rowe Depo. at 97 (testifying that removing another person's shorts without consent is a class C misdemeanor).)

51. Plaintiffs object that this paragraph is comprised of legal argument, not statements of undisputed facts. Disputed to the extent that the officers' subjective motivations, feelings, and intent are inherently questions of fact and are, moreover, not material. Disputed that officers were authorized to forcibly remove clothing from patients. (Buller Depo. at 33-34.) Disputed that officers were required to stay at the hospital following obtaining of warrant. (Buller Depo. at 68.) Disputed that the nurse that "Manuel was more receptive to" "did not have any more luck calming Manuel down than anyone else" as the charge nurse testified that the actions of the nurse in

question were "slowly working." (Buller at 44.) Plaintiffs further note that the charge nurse noted that prior to the incident Rowe seemed "tired of being there" and "impatient." (Buller at 53.)

52.       Undisputed that Rowe testified regarding his frustrations, but not material.

53.       Plaintiffs object that this paragraph is comprised of legal argument, not statements of undisputed facts. Moreover, these arguments are contrary to the testimony of the hospital staff, including the primary and charge nurses on staff. (Buller Depo. at 17-21, 23-24.)

54.       Plaintiffs object to this evidence as unauthenticated and inadmissible hearsay.

55.       Plaintiffs object to this evidence as unauthenticated and inadmissible hearsay.

56.       Plaintiffs object to this evidence as unauthenticated and inadmissible hearsay.

57.       Plaintiffs object to Rodriguez's report for lack of authentication.

58.       Plaintiffs object to this evidence as unauthenticated and inadmissible hearsay.

**SUMMARY JUDGMENT
STANDARD OF REVIEW**

At the summary judgment stage, Defendant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885-86 (1990). The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Hucker v. City of Beaumont*, 144 F. Supp. 2d 696, 699 (E.D. Tex. 2001) (citing *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 456 (1992)).

**ARGUMENTS & AUTHORITIES**

The Fourth Amendment to the United States Constitution protects against the use of excessive force by police officers, and Section 1983 is the method by which one's constitutional rights may be vindicated. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998). A Section 1983 claim requires (1) "a violation of a right secured by the Constitution or laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 687 (5th Cir. 2017).

There is no dispute that the Officers in this case were acting under color of state law at the time of the incident. Therefore, the issue presented is whether Defendants have demonstrated the absence of a genuine issue of material fact as to Plaintiff's excessive force claims, and the applicability of qualified immunity. They have not. Thus, their motion for summary judgment should be denied.

**I.    The Officer Defendants' Use of Force Was Unreasonable and Excessive Under the Circumstances.**

The Fourth Amendment guarantees the "'right of . . . people to be secure in their persons,' made applicable to the states by the fourteenth amendment." *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981). Under the Fourth Amendment, an excessive force claim requires (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014).

*First*, Plaintiffs have shown a clear injury—the untimely and painful death of Manuel Delacruz after being choked, tased, handcuffed, tackled, and pinned by the Officers. There is no question that Plaintiffs have alleged an injury. *See, e.g.*, *Pena v. Dallas County Hosp. Dist.*, 2013

U.S. Dist. LEXIS 190160, *25 (N.D. Tex. June 26, 2013) (finding decedent's death to be a cognizable injury in a Section 1983 claim)

*Second*, Manuel's death resulted directly from the Officers' use of excessive force. Specifically, Defendants used excessive force in forcibly attempting to remove Manuel Delacruz's shorts and belt against his express wishes. Officer Cherry fully appreciated Manuel's fragile mental state early in the day, especially given that Manuel had stated to Cherry, "Don't rape me," and said that Cherry was a demon. (Cherry Depo. at 27.) Cherry thought it was "obvious" that Manuel was "visibly alarmed" and felt in "real danger." (*Id.* at 40.) Cherry came to understand that Manuel had developed a fear of being raped by the police. (*Id.* at 41.) Rowe too had learned about this fear. (Rowe Depo. at 47.)

Manuel's nurse Ana Buller testified that he appeared terrified and was in a vulnerable and paranoid schizophrenic state just before the altercation—though he did not display any violent tendencies. (Buller Depo. at 55-57.) Thinking back on the chain of events that led to the altercation that claimed Manuel's life, Buller came to the realization that the combination of (*i.*) Manuel's known fear of being sexually assaulted, (*ii.*) with Rowe's inappropriate sexual joke about "taking [Manuel's] clothes off," followed by (*iii.*) being left alone with two police officers who then forcibly attempted to remove Manuel's shorts, perfectly explained Manuel's reaction and showed how the fight came about—just moments after she left the room. (*Id.* at 55-60.)

Therefore, the Officer's use of fatal excessive force—prompted by their forcible attempt to remove Manuel's shorts—was the "direct and only" cause of Manuel's death. *See Pena*, 2013 U.S. Dist. LEXIS 190160, *25 ("[T]he excessive force combined with [decedent's] preexisting heart condition and the overuse of medication to cause his death. This is sufficient to meet the requirements of the second element.").

*Finally*, the Officers' use of force was clearly excessive and clearly unreasonable under the circumstances. The Supreme Court has noted that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, "its proper application requires careful attention to the facts and circumstances of each particular case." *Id.*

"The question [is] whether the totality of the circumstances justified" the "particular" level of force used. *See Tenn. v. Garner*, 471 U.S. 1, 8-9 (1985). The Supreme Court has advised that factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9); *accord Petta v. Rivera*, 143 F.3d 895, 913 n.30 (5th Cir. 1998) (considering the same).

Here, the totality of the circumstances, as alleged, did not justify the excessive and fatal amount of force used against Manuel. Manuel had committed no crime and was not under arrest; rather, he was a patient of the hospital in need of treatment for his mental impairment. (Cater Depo. at 39-40; Cherry at 91.) The "severity" of his conduct did not warrant the use of fatal physical force, if any force at all given his vulnerable state.

Moreover, nothing had happened during the hours immediately leading up to his death that would suggest Manuel was a threat to himself or others. The ordeal of having Manuel admitted to the Medical Center unfolded over several hours in the afternoon and evening of August 1, 2016 because of the hospital's unwillingness to admit him. (Ruth Delacruz Depo. at 12-13; Rowe Depo. at 24-25.) During that time, Manuel had been calm and non-combative, albeit sometimes confused, disoriented, and anxious because of his schizophrenia. (Buller Depo. at 29, 35, 72; Cater Depo. at 38; Burch Depo. at 33; Cherry Depo. at 29-30.) Manuel's docility is described in his

medical records. (Buller Depo. at 29, 34-35, 72.) Given his behavior during the relevant period, there is no basis to conclude that Manuel posed any immediate threat to the safety of the Officers, himself, or others. Indeed, when his treating nurse would lay a hand on him, he would back away in fear, rather than engage. (*Id.* at 57.)

Manuel was not also not resisting or actively attempting to evade arrest. Although Manuel did attempt to leave the hospital, Officers Cherry and Cater escorted Manuel back to the hospital without incident. (Cherry Depo. at 41; Cater Depo. at 25-26.) In fact, he voluntarily allowed the police officers to handcuff him to his bed without objection, which the officers later removed. (Cater Depo. at 24-25; Cherry Depo. at 86-87.) The only thing that Manuel did not want to do (as part of changing into his hospital gown) was to remove his shorts, even though he had voluntarily removed his other clothes. (Buller Depo. at 30.)

Consequently, Officer Cherry and Sergeant Rowe decided to instruct everyone to leave Manuel's room and forcibly remove Manuel's shorts. (*Id.* at 58-59) It was the officers' decision that prompted the altercation and directly led to Manuel's injuries and death, (*id.* at 54-60), not any resistance on Manuel's part. Numerous witnesses, including Defendants, have noted Manuel's calm, non-threatening demeanor. (Buller Depo. at 29, 35, 72; Cater Depo. at 38; Burch Depo. at 33; Cherry Depo. at 29-30.)

While Manuel was in the process of being involuntarily admitted to the Medical Center for his own health and safety, he was not evading, or under, arrest for any crime. Rather, Manuel was simply "a citizen over whom the police had ***no probable cause*** even to exert reasonable force." *See United States v. Sanchez*, 74 F.3d 562, 566 (5th Cir. 1996). There was no need to exert any force to remove Manuel's shorts against his wishes. Doing so was unreasonable under the circumstances and contrary to generally accepted police practices.

Enclosed as **Exhibit 1** is a true and correct copy of the Declaration of Jeffrey Noble, a former Deputy Chief of Police and an expert in police practices, attaching his expert report in which Nobles opines that the use of force by the officers in this case was unreasonable under the circumstances based on a review of the facts and data available to the officers leading up to Manuel Delacruz's death. (Exhibit 1-A ¶¶ 27-38.) "Even if [the Officers] had enjoyed such authority," Manuel was a 26-year-old young man "who was neither belligerent nor any physical threat to him[.]" *See Sanchez*, 74 F.3d at 566. Because Manuel was not under arrest and posed no threat to the Officers, their "use of violent force was excessive and violated [his] civil rights." *See id.*

Long-established precedent in this Circuit reveals that in the context of analogous situations regarding Fourth Amendment "reasonableness," "the use of nearly any amount of force may result in a constitutional violation when a suspect 'poses no threat to [the officers'] safety or that of others, and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified.'" *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (alterations in original). This is exactly the situation presented in this case.

As in their prior briefing, Defendants argue in a lengthy footnote that the fatal force used by the Officers was not excessive because the use of "piling on," "hog-tying," and chokeholds are not legally impermissible. (ECF Doc. 66 at 28-29 & nn.8-9.) However, in each of the cases cited by Defendants the subject detainees were invariably criminal suspects and arrestees, many of whom were under the influence of illegal drugs and actively resisting arrest. (*See id.*)

Manuel, a mentally-impaired hospital patient, posed no threat to the Officers' safety, nor did he initiate the altercation that ultimately led to his death. Physical force was not justified in this case, let alone fatal force. At minimum, there is a fact issue that precludes the grant of summary judgment.

## II.    The Officer Defendants Are Not Entitled to Qualified Immunity.

A police officer is entitled to qualified immunity only if his conduct was objectively reasonable at the time of the action.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1850 (U.S. 2017).  If a reasonable officer would have known that the alleged conduct was unlawful under clearly established law, no immunity may attach.  *Id.*; *accord Johnson v. Eggebrecht*, 2015 U.S. Dist. LEXIS 174757, at *40 (E.D. Tex. Dec. 28, 2015).

Here, the police officers used unreasonable and excessive force against a hospital patient—not an arrestee or criminal suspect—while awaiting in the process of receiving treatment mere feet away from his family.  No reasonably officer would have used force to strip a psychiatric patient of their shorts, as this conduct would be unlawful under established law.  *See* Tex. Penal Code 22.01(a)(3) (assault by offensive physical contact); (Exhibit 1-A ¶¶ 27-38).  Indeed, Rowe recognized that removing another person's shorts in the absence of consent is a misdemeanor offense.  (*See* Rowe Depo. at 97; *see also* Buller Depo. at 33-34; Cater Depo. 41-42.)

Predictably, the officers attempt to forcibly remove Manuel's shorts ended in a physical altercation.  By the end of the fight, the officers had handcuffed, choked, struck, tackled, and tased Manuel when no facts suggested any danger to their safety or that of others and, in fact, fact witnesses and some Defendants themselves had testified that he had been calm and non-violent up to the time of the altercation.  (Buller Depo. at 29, 35, 72; Cater Depo. at 38; Burch Depo. at 33; Cherry Depo. at 29-30.)

This conduct was objectively unreasonable on the part of the officers under the circumstances, as analogous precedent in this Circuit makes clear.  For example, in *Hobart v. Estrada*—a case presenting similar facts to this one—a police officer entered the home of a

mentally impaired 19-year-old suffering from a schizoaffective disorder that caused delusions. 582 Fed. Appx. 348, 350 (5th Cir. 2014).

The officer was called to the scene by the young man's mother who was worried after he refused to take his medication. *Id.* The officer was aware of the young man's mental impairment and knew that he was not armed. *Id.* Nonetheless, within minutes of entering the home, the officer shot and killed the young man after claiming that the young man had charged him, fist raised. *Id.* at 350-353. The district court denied the officer's motion for summary judgment on qualified immunity because the court found that the officer "failed to establish that his use of deadly force was reasonable." *Id.* at 355. The Fifth Circuit affirmed the denial. *Id.* at 356.

Likewise, denial of Defendants' motion to dismiss is proper here because Plaintiffs have sufficiently alleged facts showing that the Officers' use of ***any*** force here was objectively unreasonable and contrary to established law as of August 1, 2016, as applicable case law shows. *See also Brown v. Long Beach Police Dep't*, 105 Fed. Appx. 549, 551 (5th Cir. 2004) (affirming denial of motion to dismiss and overruling qualified immunity argument where police officer had tackled 100-pound teenager with no known history of violence because "there was no caselaw permitting [the officer's use of force], and the right under the Fourth Amendment to be free from the excessive use of force by law enforcement officers was clearly established"); *Mireles v. United States*, 2016 U.S. Dist. LEXIS 126361 (S.D. Tex. July 29, 2016) (recommending denial of summary judgment on qualified immunity where officer had tackled suspect to the ground, placed weight on her, and handcuffed her after she had moved a few feet to get a better view of the officer while he conducted a search of the suspect's purse). Therefore, Defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court sustain Plaintiffs'

objections to Defendants' summary judgment evidence and deny Defendants' motion for summary

judgment

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & AZIZ**

By: _____*/s/ Muhammad S. Aziz*_____
      MUHAMMAD S. AZIZ
      State Bar No. 24043538
800 Commerce Street
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile: (713) 225-0827
maziz@awtxlaw.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL:**

**HOUSE PERRON & HOUSE PLLC**

By: _____*/s/Joe House*_____
      JOE HOUSE
      State Bar No. 10042150
      joe@houseperron.com
      BENJAMIN G. HOUSE
      ben@houseperron.com
      State Bar No. 24092540
Norfolk Tower
2211 Norfolk Street, Suite 1150
Houston, Texas 77098
Telephone: (281) 762-1377
Facsimile: (866) 342-7683

**THE FERGUSON LAW FIRM, LLP**

By: _____*/s/ Mark C. Sparks*_____
      MARK C. SPARKS
      mark@thefergusonlawfirm.com
      State Bar No. 24000273
350 Pine Street, Suite 1440
Beaumont, Texas 77701
(409) 832-9700
(409) 832-9708 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was furnished to all counsel of record in accordance with the Federal Rules of Civil Procedure on this 6th day of June 2019:

Frank D. Calvert
Calvert Eaves Clarke & Stelly, LLP
Beaumont Tower
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702
***Counsel for Defendants, City of Port Arthur,***
***Texas and Port Arthur Police Department***

*/s/ Muhammad S. Aziz*
Muhammad S. Aziz